# MACHEM *vs.* MACHEM.

[BILL IN EQUITY BY WIDOW AGAINST HER HUSBAND'S EXECUTOR, FOR ALLOTMENT OF SLAVES AS HER SEPARATE ESTATE, OR DISTRIBUTIVE SHARE, AND TO ENJOIN ACTION·AT LAW FOR THEIR RECOVERY.]

1. *Jurisdiction of equity to decree division of slaves belonging to decedents' estates.*—A widow, or other distributee of an estate, who retains possession of slaves on the ground of an attachment to them as family negroes, cannot come into equity to enjoin an action at law by the personal representative for their recovery, and to have them allotted to her as a part of her distributive share; the statute law having provided another forum to make a division in such case.

2. *Reformation of will in equity.*—A will cannot be reformed in equity, so as to make it create a separate estate in a married woman, on proof of an agreement, prior to her marriage, between the testator, who was her father, and her intended husband, that the will of the former should exclude the husband's marital rights.

3. *Construction of will.*—The will which was construed in Machen v. Machen, 15 Ala. 373, again examined, in a suit between the same· parties, and the former construction adhered to.

4. *Declarations made through ignorance or mistake.*—In a suit between an executor and the widow of his testator, the declarations of the testator, founded in ignorance or mistake as to his rights, to the effect that certain slaves, which he held under the will of his wife's father, were her separate property, should not be received to divest the property out of his executor.

5. *What constitutes reduction to possession by husband.*—Where slaves are bequeathed to a married woman, by words which do not create a separate estate in her, and are delivered to her by the executor, as her separate property, with the consent of her husband, who thenceforward until his death recognizes and treats them as belonging to his wife, and asserts no claim in himself,—this is not a reduction to possession as husband, and his marital rights do not attach.

6. *Jurisdiction of equity where remedy at law is adequate and complete.*—A widow cannot come into equity, to enjoin an action at law by the personal representative of her husband, for the recovery of slaves which were bequeathed to her, and which her husband never reduced to possession, as husband, in his lifetime: her remedy at law is adequate and complete.

[2.] *Proof without allegations.*—No decree can be rendered on proof which is not applicable to any of the allegations of the bill.

7. *Mistake no excuse for failure to reduce to possession.*—If the husband fail to reduce to possession during the coverture slaves bequeathed to his wife, because he erroneously supposed that the will created a separate estate in her, his mistake does not avoid the effect of the failure, and his marital rights do not attach.

APPEAL from the Chancery Court of Cherokee.

Heard before the Hon. JAMES B. CLARK.

This bill was filed by Mrs. Jane Machem, the appellant, against William Machem, as the executor of her deceased husband, James Machem, to enjoin an action at law for the recovery of certain slaves, and to have them set apart as her separate estate under the will of her father, Merry Hall, or as her distributive share of her husband's estate. The bill was filed in October, 1849; the action sought to be enjoined was before this court, on writ of error, at its January term, 1849, and may be found reported in 15 Ala. 373; and the clause of the will, under which the complainant claims the slaves, is in these words: "I leave to Jane Machem two negroes, Tamar and Prince, during her life, then to her bodily heirs; if there should be no heirs, for the said negroes and increase to go back to the heirs, and an equal division made amongst the heirs."

The bill, as amended, alleged that said James Machem, before his marriage with complainant, and when he asked her father for her hand in marriage, was distinctly informed by the said Merry Hall that it was his intention, by his last will and testament, to settle her portion of his estate upon complainant for her separate use, and to exclude the marital rights of her husband; that said James expressed himself satisfied with this arrangement, and consented that the property should be so settled; that said Merry Hall, after the intermarriage between complainant and said James Machem, departed this life, in South Carolina, where he resided, after having made and published his last will and testament, which

was duly admitted to probate after his death, and letters testamentary granted to the defendant, as executor, by the county court of Cherokee county, Alabama; that the testator intended, by the clause of his will above quoted, to give complainant a separate estate in the slaves during her life, and, in the event of her death without children, that the slaves should then go to the testator's heirs; that this was the construction put on the will, both by the testator and by said James Machem; that said James, after the testator's death, refused to receive the slaves, and directed the executor to deliver them to complainant as her separate property; that the executor accordingly delivered them to her, and she held them as her own separate property during the life of her said husband, who uniformly disclaimed all interest in them, treated and recognized them as belonging to his wife, required her to pay their taxes and other necessary expenses, and kept them separate from his own negroes; that said James made no disposition of said slaves by his last will and testament, declaring to a friend that he considered them his wife's property, that he desired her to have them, and that he would not interfere with her rights by attempting to bequeath them; that said James was possessed of a large estate at the time of his death, and left several children by a former marriage; that complainant dissented from his will within the time prescribed by the statute; that the executor has sold most of the personal estate, and paid most (if not all) of the outstanding debts; that he has commenced suit against complainant, in the circuit court of Cherokee, to recover these slaves, to whom she is much attached as they are family negroes; and that more than eighteen months have elapsed since the grant of letters testamentary to the defendant. The prayer of the bill is, "that said negroes may be set apart to complainant under the will of her said father and the intention of her said husband, or as her portion of the estate of her said husband under the laws of distribution; that the defendant be perpetually enjoined from proceeding with his said action at law; and for such other and further general relief as may seem meet and consist with equity."

The executor answered the bill,—denying that the will of Merry Hall was intended to create a separate estate in the

slaves in the complainant, or that her husband so recognized and treated them, or that possession was delivered to her by the executor, or that her husband uniformly disclaimed all interest in them, or that he intended complainant to have them after his death; and alleging, on the contrary, that the legal effect of the will was to vest the property in the husband, that he reduced the slaves to his possession, and that, if he ever declared them to be the separate property of his wife, such declarations were made in ignorance of his rights, and are therefore of no binding effect.

The evidence taken in the cause is quite voluminous, but it is not deemed necessary to give an abstract of it.

The chancellor held, 1st, that the complainant could not retain the possession of the slaves against the demand of the executor, and ask a court of equity to set them apart to her as her distributive share of the estate; 2d, that the alleged agreement between the complainant's father and husband, prior to her marriage, even if proved, could have no effect on the construction of the father's will; 3d, that the will did not create a separate estate in the complainant; 4th, that the evidence was not sufficient to prove the allegation that the husband refused to receive the property, or that he always disclaimed any interest in it; 5th, that the declarations of the husband, after reducing the property to possession, to the effect that it belonged to his wife, would not, if made through ignorance or mistake of his rights, create a separate estate in the complainant; and, 6th, that his failure, either through ignorance or mistake, to reduce the property to possession as husband, prevented his marital rights from attaching. He therefore dismissed the bill, but without prejudice to the right to file another, and dissolved the injunction; and his decree is now assigned as error.

ALEX. WHITE and J. B. MARTIN, for appellant:

The property in the slaves in controversy, at law, is in the defendant, as was decided in Machen v. Machen, 15 Ala. 373; but it is there strongly intimated that the complainant might have relief in equity, and that intimation is reiterated in the case of Williams v. Maull, 20 Ala. 721. The testimony in this record is stronger than it was on the trial at

law, and is sufficient, upon legitimate argument, to sustain the bill.

These slaves, being a legacy from the wife's father, are a mere chose in action, until the husband asserts his marital rights; and if he does not do this in his lifetime, the right of property does not go to his personal representative, but survives to the wife; and he must reduce them to possession with the intention of asserting his right as husband, and not as trustee.—Andrews & Bro. v. Jones, 10 Ala. 400; Hogan v. Bell, 4 S. & P. 286; Jennings v. Blocker's Adm'r, 25 Ala. 422; 4 Rawle, 468; Wall v. Tomlinson, 16 Vesey, 413; Blount v. Bestland, 5 *ib.* 515; Baker v. Hall, 12 *ib.* 497; 7 *ib.* 294; 1 Wms. on Ex'rs, 616; Clancy on Rights of Married Women, 139–40.

In this case, the evidence abundantly proves that the husband never received the property as husband, but, on the contrary, at the time it was delivered to his wife by the executor, he disclaimed any interest in it, and so treated it during his whole life; always showing, both by act and declaration, that he regarded it as his wife's property. He suffered her to control the slaves, made her pay their taxes, doctor's bills, and other necessary expenses out of her own money, and in all respects, so far as was practicable, treated them as her separate property; and these acts and declarations are admissible evidence against the defendant.—Andrews & Bro. v. Jones, 10 Ala. 427; Burnett v. Branch Bank, 22 *ib.* 642.

Courts of equity recognize and enforce contracts between husband and wife, which a court of law cannot regard; and whenever the conduct of the husband is such as to lead, fairly and reasonably, to the conclusion that he had released his rights in favor of his wife, or had set apart property for her separate use, or had made a gift of the property to her, the right of the wife will be sustained, in a contest between her and the personal representative of her husband.—Williams v. Maull, 20 Ala. 721; Puryear v. Puryear, 12 *ib.* 13; Gamble v. Gamble, 11 *ib.* 974. Where stock was purchased by the husband, in the name of himself and wife, on his death it was decreed to her as survivor.—Rider v. Kidder, 10 Vesey, 367; also, Sledge v. Clopton, 6 Ala. 589. The bill does not,

in terms, allege a gift, or a relinquishment, or a failure on the part of the defendant's testator to assert his marital rights; but it charges the facts which, in law, constitute a relinquishment or gift, and the court will so declare it.— Bishop v. Bishop, 13 Ala. 475; Eldridge v. Turner, 11 *ib.* 1050; Gilchrist v. Gilmer, 9 *ib.* 985.

It is competent for the owner of property to release any right, to any kind of property, which he has not in possession; and equity will uphold a release or relinquishment by a husband to his wife.—Sheppard's Touchstone, vol. 1, p. 322; Andrews & Bro. v. Jones, 10 Ala. 427, 461. A relinquishment of personal property may be made as well verbally as in writing; and if complainant's husband, at the time it was delivered by the executor, had made a written relinquishment of it to his wife, there can scarcely be a question of its validity, especially when it is remembered that it was never revoked or repudiated by him.

The complainant's father bequeathed these slaves, under the belief that he was securing them to her sole and separate use; and the husband received them under the same belief, and with full notice. In such case, a trust arises in favor of the wife, which a court of equity will enforce.—Betts v. Betts, 18 Ala. 787.

This is an equitable fund, which could not be reached, in the hands of Merry Hall's executor, in a court of law; and a court of equity, before it would enforce the rights of the husband, would require him to make a reasonable provision for the wife.—Upchurch v. Norsworthy, 12 Ala. 532; Andrews & Bro. v. Jones, 10 *ib.* 461; Terrell v. Green, 11 *ib.* 216; Inge v. Forrester, 6 *ib.* 421; 2 Story's Equity, § 1403. It is competent for the husband to do voluntarily what a court of equity would have compelled him to do; and the provision was a reasonable one, under the circumstances in evidence.

The circumstances of the case authorize the court to presume a gift by the husband to the wife, which will be good as against the husband's executor.—Puryear v. Puryear, 12 Ala. 13; Andrews & Bro. v. Jones, 10 *ib.* 427; Williams v. Maull, 20 *ib.* 721.

In decreeing in favor of the complainant, the court would

but carry out the intention of her husband, who, if he had not supposed that these slaves already belonged to his wife, would have bequeathed them to her. If any mistake then was made, the husband was not misled by it, but did that only which he would have done in more unquestionable form had he known his rights.—Juzan v. Toulmin, 9 Ala. 662; Jones v. Watkins, 1 Stew. 81; 1 Story's Equity, § 110.

The complainant has not an adequate and complete remedy at law, and is therefore entitled to come into equity. Her claim is based not merely on the fact that her husband never asserted his marital rights, but on the additonal ground that he relinquished or gave the negroes to her as an equitable provision, and that this fact is not available at law.—Williams v. Maull, 20 Ala. 732; Anderson v. Hooks, 9 ib. 704; Teague v. Russell, 2 Stew. 420.

D. W. Baine and J. J. Woodward, contra:

1. In equity, the complainant can hold the property by virtue of some trust in her favor, which a court of law could not establish.

2. That the will of Merry Hall does not create such a trust, see Machen v. Machen, 15 Ala. 373; and that the will cannot be reformed, see 1 Story's Eq. § 179, and cases cited.

3. The bill does not pretend that complainant's husband, by his declarations, ever created, or attempted to create, any trust in her favor in the property; but, on the contrary, it positively negatives the idea that he ever assumed to do anything whatever with it.

4. The only effect of the admissions and acts of the husband, charged in the bill, would be to prevent his marital rights from attaching; in which event, complainant, as the survivor, holds the legal title, and has a full and adequate remedy at law.—Puryear v. Puryear, 12 Ala. 13.

5. The allegations of the bill, as to the husband's disclaimer of his marital rights at the delivery of the property, are not supported by the proof. The witnesses Milly and Thomas Hall are positively contradicted by Paine; besides, they vary materially from each other, and their evidence is on its face unreliable. The bill alleges a refusal by the husband to receive the property as his own, and a direction to

deliver it to complainant, while the proof shows only an agreement to hold the property as his wife's separate estate; and this variance is fatal.—Owens v. Collins, 23 Ala. 845; Flake & Freeman v. Day & Co., 22 *ib.* 132; Gibson v. Carson, 3 *ib.* 421; Julian v. Reynolds, 11 *ib.* 960.

6. The admissions and declarations of the husband were made in ignorance of his marital rights, and cannot affect him.—13 B. Monroe, 273; Smith v. Shackleford, 9 Dana, 476; Leferce v. Robinson, Littell's Select Cases, 22; Moore v. Hitchcock, 4 Wend. 292; Hawley v. Bennet, 5 Paige, 104; Freeman v. Boynton, 7 Mass. 488; Warden v. Tucker, *ib.* 452; Gamble v. Gamble, 11 Ala. 976; 1 Story's Eq. § 130.

7. The delivery to the wife, unaffected by the declarations of the husband, vested the property in him.—Machen v. Machen, 15 Ala. 373. This decision is conclusive of the law of this case; but, even if it were permitted to go behind it, it is amply sustained by authority.—Magee v. Toland, 8 Port. 36; Pitts v. Curtis, 4 Ala. 350; Chamber v. Perry, 17 *ib.* 729; Hopper v. McWhorter, 18 *ib.* 229; McDaniel v. Whitman, 16 *ib.* 344; Lenoir v. Raney, 15 *ib.* 669; Whitaker v. Whitaker, 1 Dev. 310; Granberry v. Mhoon, *ib.* 456; Pettijohn v. Beasley, 4 *ib.* 512. In these cases, no actual intention of asserting his marital rights was shown by the husband; and yet it was held that they attached, and, in most of the cases, as against the wife surviving.

8. As to the rights of the surviving wife, the maxim applies, *equitas sequitur legem.*—1 Madd. 477–8; 1 Story's Eq. § 64; Law Library, vol. 59, top p. 106.

CHILTON, C. J.—We think the learned chancellor has, in the main, taken a very correct view of this case, and we fully concur with him in the following propositions :

1. That, as widow of James Machem, the complainant has no right to hold on to the slaves in controversy, and resort to a court of equity to have them set apart as so much of her share of her husband's estate. The statute law has provided another forum for making the distribution, in cases where a division or allotment of personal chattels *in specie* is required to be made of decedents' estates; and, although there are cases where the chancery court may rightfully exercise juris-

diction of this kind, this does not fall within that category. No lien upon, or equitable right to the slaves being shown, it is very clear that the plaintiff's bill, so far as it depends upon her right as widow or distributee of James Machem, must fall to the ground.

2. We agree that the will of Merry Hall cannot be reformed, so as to vest in the complainant a separate estate, by reason of any agreement entered into between said testator and the husband of complainant before the will was made, that it should contain such a provision. The will is ambulatory. The testator could, and *non constat* but that he did, change his mind. Be this as it may, we must look to the will, and construe it according to the plain import of its terms. If these contain no ambiguous expressions, requiring explanation by proof, we are not permitted to receive oral proof, to alter, add to, or vary its terms.—Jarman on Wills, 342, *et seq.; ib.* 346–349, and note.

3. It is further very clear, and so it was decided when this same will was presented before this court for construction in 15 Ala. Rep. 373, that in the bequest to complainant of the slaves in controversy, no separate estate is created. It only remained, therefore, that the husband, James Machem, should reduce the slaves into his possession, *quoad* husband, to complete his right of absolute property in said slaves.

4. We also concur with the chancellor, that any declaration made by James Machem, going to show that the property was the separate estate of his wife, founded in ignorance of his rights, should not be received to divest the property out of his administrator. And here we take occasion to say, that it is very clear he was mistaken, as to the legal effect of the bequest of the property to his wife by the will of her father. He supposed it vested her with a separate property, and effectually excluded his marital rights. We have seen it did not. But we shall recur to this subject again, when we come to treat of the effect of these declarations in another aspect.

5. The question, however, still remains, Did the husband, James Machem, ever reduce the property into his possession, *as husband?*—Bell on H. & W. 49–50; 1 Bright on H. & W. 34; Co. Lit. 351, b. We think the proof set out in this record shows that he did not. It establishes, with reasona-

ble certainty, that it was delivered by the executor of Merry Hall to the complainant, as for her separate property, if not by the positive direction, at least by the consent of her said husband, James Machem, and from that day forth, if his declarations are to be accredited, he regarded and treated the property as belonging to his wife, and as having no claim to it himself. Had he demanded the property of Humphrey Hall, the executor, it does not appear that he could have obtained the executor's assent to the legacy, as vesting a title in him. The assent was to the wife, as for her sole and separate use; and the property being thus delivered to her, the concurrence in the gift by the husband, and his continued treatment of it as her property whenever he is heard to speak of it, clearly show that he laid no claim to it as husband, but that it should remain to the wife as her property. This the husband might well have done, whether the will gave him the property through his wife, or not. He had his election to possess himself of the property as husband by suit or otherwise; or, after the wife obtained the actual possession, we will not say that he might not, even after consenting to her receipt of it as her separate property, have asserted his claim, and have held it as husband. But the proof shows that he did not do this. At least, complainant shows how she received it, and how he regarded it as hers, and held it for her; and if he ever changed his mind, the defendant should have proved that, as the complainant is not required to prove that he had not changed his mind, having shown his settled purpose,—this being a negative which she could only prove by the character of proof which she has adduced. His declaration, as proved by Mr. Cunningham, is too indefinite and weak to create a counter presumption, especially as it conflicts with more specific declarations made to the same witness.

6. It follows, however, if this be a correct view of the facts, and the marital rights of the husband never attached to the slaves, that the complainant has no need to resort to chancery; for, upon the death of her husband, her remedy is complete at law. The decision of this court in 15 Ala., above referred to, was predicated upon the facts then presented, showing a delivery to the wife without more. The

marital rights of the husband consequently became vested, and the property absolutely his *eo instanti*. This record varies the facts, showing the delivery to be for her separate use, by the concurrence of the husband, followed up by his oft-repeated declarations, that the property was her's, and that he was merely protecting it for her. As the law court furnishes a complete and adequate remedy in this aspect of the case, chancery will not entertain jurisdiction.

It is only upon the principle, that the husband's marital rights did attach, and that he subsequently made a gift, provision, or settlement of the slaves upon the complainant, that she could resort to this court, after his death, to enjoin the action of his personal representative for their recovery. The bill is not filed upon any such agreement, or to enforce any such gift by way of providing for her; and, if we concede that his declarations tend to establish the existence of a gift to the wife, there being no allegations in the bill to which the proof would be applicable, no decree can be rendered upon it.—3 Ala. Rep. 421; 11 *ib.* 960; 13 *ib.* 681; 22 *ib.* 132; 23 *ib.* 845; 25 *ib.* 212; 6 John. 565; Story's Eq. Pl. § 257.

7. The fact that James Machem was mistaken as to the legal effect of the bequest to his wife, and that his declarations were predicated upon such mistake, (if such be the fact,) would, as we have suggested, destroy the effect of such declarations as indicating an intention to part with his right to the property, and to vest that right in his wife. But, if he refused to accept the gift as one to himself, and conceded the right of his wife to accept it as of her separate estate,— directed the executor so to deliver it to her, and the same was so delivered, and said Machem held it as her property, as shown by his repeated declarations qualifying his possession, then it is wholly unimportant whether his declarations and conduct were founded in a mistaken view of his rights or not; for *he has not reduced the property into possession as husband.* That his failure to do so was the consequence of a mistake, does not change the result, any more than delay in the collection of a debt due the wife *dum sola*, under the mistaken opinion by the husband that it would be paid to him without suit, or would go to his personal representative in the event of his death before its collection. The mistake, in

either case, could not operate to confer upon the husband, as such, the property or the money. No question as to constructive possession arises in this case, and hence we do not notice that position of the counsel. The husband either had, or had not, possession *as husband.* If he had not, the defence is legal; if he had, but conceded the property to his wife, this matter of equitable concession or agreement must be averred in the bill, before it can be made the foundation for a decree. See authorities above.

We have thus been particular in noticing the several phases in which this case is presented, to avoid misconception, as well as to enable the parties to understand their rights, and the primary court to adjudicate them.

It follows that there is no error in the decree of the chancellor in dismissing the bill. It is consequently affirmed.