EHRLICH, Appellant, vs. BRUCKER, Respondent.

*March 23—April 19, 1904.*

*Partnership: Findings: Evidence: Interest.*

1. In an action to dissolve an alleged partnership and for an accounting, findings of the trial court—to the effect that no partnership ever existed between the parties; that of certain goods which plaintiff claimed to have furnished and put into the business, a part had been purchased and paid for by defendant and a part had merely been placed in defendant's store for sale; and that defendant, having had the benefit or received the proceeds of the latter, was liable to plaintiff in a certain sum as a balance over and above payments thereon—are *held* to be sustained by the evidence.

2. Where there is no agreement to pay interest on a loan, and re-
payment is made on demand, the borrower is not liable for
interest.

APPEAL from a judgment of the circuit court for Fond
du Lac County: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

This action was commenced May 17, 1900, to dissolve a
partnership alleged to have been entered into by the plaintiff
and defendant April 8, 1899, and for an accounting of the
net profits and business of the firm from that date to Jan-
uary 1, 1900. The complaint alleges, in effect, that each
party was to put into the business $2,500, and that the
plaintiff put in $1,000 in cash and $1,850.80 in goods, wares,
and merchandise, and that in January, 1900, the defendant
excluded plaintiff from the business. The defendant an-
swered to the effect that the plaintiff and defendant had
never been partners, and that no partnership agreement ever
existed between them; that the defendant received $1,000
from the plaintiff, which he had repaid to her in full; that
he had employed the plaintiff in his store to assist him in
managing and teaching him to manage the business, and had
fully paid her for her services; that while she was there she
brought some "household goods" into the store, and sold the
same, and received the proceeds thereof, and that the defend-
ant received nothing therefrom; and otherwise denied each
and every allegation of the complaint.

Thereupon the cause was tried, and the court found as
matters of fact in effect: (1) That no partnership was formed
by or existed between the plaintiff and the defendant.
(2) That from April 8, 1899, to January 6, 1900, the plaint-
iff worked in the defendant's store at Fond du Lac as his em-
ployee for hire, and not otherwise; that for her services so
rendered the defendant paid her as full compensation $10
per week. (3) That in March or April, 1899, the plaintiff
loaned to the defendant $1,000, which sum he repaid to the
plaintiff in February or March, 1900; that no part of the

$1,000 was put into the business by the plaintiff as a part-
ner therein, nor was the same a contribution on her part to
the capital invested in the business; that she loaned or de-
posited said $1,000 with the defendant on his promise to
repay it to her on demand, and that he had repaid to the
plaintiff the principal sum of $1,000.    (4) That certain
goods were shipped from Chicago to the defendant's store at
Fond du Lac in May or June, 1899, and that in the plaint-
iff's presence, and with her full knowledge and approval, the
defendant purchased those goods from her husband, one L. B.
Ehrlich, as the owner thereof, and promised to pay him for
the same; that the plaintiff did not put said goods into the
store of the defendant as partner or otherwise, and that she
has no lawful claim or demand against the defendant on ac-
count thereof, and that the plaintiff never owned said goods.
(5) That certain other goods, known as "household goods,"
were removed from the plaintiff's dwelling house at Fond
du Lac to the store of the defendant in that city on or about
April 8, 1899, and that said goods were placed in said store
to be sold for the plaintiff's benefit and by her or under her
direction, but that the same were not put in by the plaintiff
as partner in the business, nor with the understanding or
agreement that said "household goods" should become a part
of the stock in trade in said store in the sense that the de-
fendant had or should have any interest in said goods, and
that the defendant never had any interest in said goods, and
never made any agreement with the plaintiff in respect there-
to, other than she might sell them in the store for her own
benefit as her own goods; that some of such "household
goods" were sold from the store while the plaintiff was so
in the defendant's employment; that some of such sales were
made by the plaintiff and some by others of the clerks in said
store; that some of the proceeds were paid directly to the
plaintiff, and were by her rightfully appropriated to her own
use; that certain of the proceeds of such sales of said "house-

hold goods" were paid over to the cashier of the store, and went into the store funds, and the defendant had the benefit thereof; that when the plaintiff was so discharged by the defendant January 6, 1900, some of the "household goods" were left by the plaintiff in the store of the defendant, and that thereafter certain sales thereof were made, and the proceeds were received by the defendant, and applied to his own use. (6, 7) The court being unable to, determine from the evidence the character, amount, or value of such "household goods" belonging to the plaintiff of which the defendant had received the benefit, or to state the true account between the parties by reason thereof, the court, upon its own motion, referred the matters in controversy as to such "household goods" to a circuit court commissioner, to hear, try, and determine the same and report thereon to the court, in effect, as to whether the defendant had received or had the benefit of any portion of such goods, and the amount and value thereof, and whether the plaintiff had taken from the store or had the benefit of any portion of such goods, and the amount and value thereof, and to state the account between the plaintiff and defendant in respect thereto, giving to the defendant credit for $171 paid by him to her after she was excluded from the store, January 6, 1900; and also to credit him for the amount of the goods sold and delivered by him to her after such last-named date, and the amount of the proceeds of sales of such "household goods" received by the plaintiff and appropriated by her to her own use, and charging the defendant with the proceeds of sales of such goods of which he had the use and benefit, and charging him with accrued interest, if any, on the $1,000 mentioned.

After hearing the parties and considering the evidence in the case, the court commissioner found upon the questions so submitted to him as matters of fact, in effect, that the "household goods" mentioned in the findings of the court were of the aggregate value of $748.18; that they were intermingled

by the plaintiff, with the knowledge and consent of the defendant, with the goods belonging to the defendant in the store, and that it was impossible for the parties, as shown by their testimony, to identify very many of the "household goods," or distinguish them from those belonging to the defendant; that such goods were so intermingled with the intention of both plaintiff and defendant that such goods should be sold in the store and the plaintiff receive the results of such sales; that it was impossible from the testimony to report each article of the "household goods" and its value, then in the defendant's store, or to determine whether any of such goods were still in the store; that on the trial before the referee the defendant offered to permit the plaintiff to select, if she could, such "household goods" as remained in the store, and to examine his books and sales slips to aid her in doing so; that by reason of the intermingling of the "household goods" with other goods in the store it was impossible for the defendant to select the "household goods," if any, which might have remained unsold at the time of the trial, in order to tender them to the plaintiff; and also impossible for the plaintiff to take advantage of the defendant's offer to permit her to select the "household goods" then remaining on hand; that up to the time of the trial before the referee such goods were sold by the defendant in the usual course of trade, with his own goods; that the defendant never agreed to pay interest on the $1,000 loaned to him by the plaintiff, and was not liable for interest thereon. The referee charged to the defendant the whole amount of such "household goods" so placed in the defendant's store by the plaintiff ($748.18), less the items which had been received by the plaintiff, and less the item of $171 paid by the defendant to the plaintiff, as found by the court; leaving a balance due to the plaintiff from the defendant of $541.53.

The court refused to modify such findings of the referee, and denied the defendant's motion to re-refer the cause, and

on motion of the plaintiff confirmed the referee's report and ordered judgment thereon in favor of the plaintiff for the amount last above mentioned. From the judgment entered thereon accordingly, with costs, the plaintiff appeals.

For the appellant there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

For the respondent there was a brief by *Swett & Ecke,* and oral argument by *H. E. Swett.*

CASSODAY, C. J.    1. The important question presented is whether the finding of the trial court that no partnership ever existed between the plaintiff and the defendant is sustained by the evidence. There is no pretense that there was ever any written agreement or articles of copartnership. The plaintiff's claim is that she entered into an oral agreement with the defendant wherein and whereby they agreed to run and operate a general department store at the city of Fond du Lac. In her verified complaint she alleges that such agreement was made April 8, 1899. In her testimony she swears that "the partnership was formed about the last part of November, 1898," at her house in the city; that they opened the store April 8, 1899, and that she was sent away January 6, 1900. There is considerable testimony tending to corroborate the plaintiff as to the existence of such copartnership. It consists largely in admissions or statements of the defendant to the effect that the plaintiff was interested in the business, or was his partner. The defendant flatly denied that he was ever in partnership with the plaintiff. The circumstances were peculiar. It appears, and is undisputed, that prior to December 1, 1898, the plaintiff and her husband conducted a mercantile business in the store building in question in the name of B. Ehrlich—the plaintiff's father-in-law—who at the time resided in Chicago. That building was owned by the defendant's wife. B. Ehrlich failed in that business in November, 1898, and December 1, 1898, the defendant was

appointed temporary receiver of the property. The defendant had had no experience in mercantile business. He had some years before been a farmer and lived in the country and upon being elected sheriff had moved into the city, where he continued to reside. The result was that he employed the plaintiff and her husband to assist in closing out the business, and for that purpose the store building was occupied until April 1, 1899, when it was closed up. The fact of that building being vacant and the defendant having seven grownup children, the oldest of which was twenty-nine years of age, and the offer of the plaintiff and her husband to work for him very cheaply, and buy goods for him, and teach and educate him and his children in the business, induced him, according to his testimony, to go into the business in his own name. There is much testimony tending to corroborate the statement of the defendant that he was never in partnership with the plaintiff. Certainly we cannot hold that the finding that the plaintiff and defendant were never in partnership is against the clear preponderance of the evidence.

2. Of the $1,850 worth of goods which the plaintiff claims to have furnished and put into the business, she testified that $1,075 in value thereof were purchased by her of one Frank in Chicago at a discount of nearly $200 by reason of their being in broken lots and broken boxes. The trial court found that said last-mentioned goods were shipped from Chicago to the defendant's store in May or June, 1899, and that the defendant, in the plaintiff's presence, and with her full knowledge and approval, purchased those goods from the plaintiff's husband, as the owner thereof, and promised to pay him therefor; and that the plaintiff did not put such goods into the store as partner or otherwise; and that she had no lawful claim or demand against the defendant on account thereof and that the plaintiff never owned said goods. The defendant testified to the effect that he understood that the goods had been bought by the plaintiff's father-in-law in

Chicago, who had opportunities for buying up goods for fifty or sixty cents on the dollar, in pursuance of a conversation which the defendant had with the old gentleman in March previous; and that the defendant agreed to pay the plaintiff's husband for the goods so shipped from Chicago, according to the invoice which should be made out—being about eight or nine hundred dollars. There is considerable testimony tending to corroborate the defendant's version of the transaction. There is some evidence tending to prove that some of the goods so shipped from Chicago were part of the goods which formerly belonged to the plaintiff's father-in-law. Certainly, we cannot hold that the finding of the trial court as to those goods so shipped from Chicago is against the clear preponderance of the evidence.

3. Since there never was any partnership between the plaintiff and the defendant, it is obvious that the findings of the trial court and the referee as to the "household goods," so called, were in favor of the plaintiff. As indicated, the defendant was charged with the full amount of those goods, except such as the plaintiff received or had the benefit of; and, in addition, the defendant was credited with the $171 which the court found the defendant paid to the plaintiff after she left the store January 6, 1900, leaving the balance against the defendant as found by the referee and adjudged by the court.

4. Counsel for the plaintiff claims that the evidence did not warrant this credit of $171. But just before the testimony was closed the plaintiff was recalled, and testified to the effect that after she left the store the defendant made four cash payments, amounting in the aggregate to $171. So that finding is supported by the evidence. Prior to that time the plaintiff had testified to the effect that after she left the store she had her husband get from the defendant $500 about February 1, 1900, and $500 more about March 1, 1900. These two items make the $1,000 which the court

Kath v. Wisconsin Central R. Co. 121 Wis. 503.

found to be a repayment of the $1,000 which the plaintiff had previously loaned to the defendant. So there is no dispute as to such payments.

5. The court and referee also found that neither at the time of making such loan nor at any other time was there any agreement or understanding that the defendant would pay any interest thereon to the plaintiff. There is no evidence of any demand that such repayment should be made prior to the time it was actually made. There was no error in holding that the defendant was not liable for the payment of interest on such loan. *Laycock v. Parker,* 103 Wis. 161, 187, 188, 79 N. W. 327.

*By the Court.*—The judgment of the circuit court is affirmed.