ESTATE OF GRAY: GRAY, Appellant, vs. CURRAN, Executor, and others, Respondents.

*October 7—December 1, 1953.*

For the appellant there was a brief by *Walker & Taylor* of Portage, and oral argument by *Dorothy Walker* and *John F. Taylor*.

For the respondents Ida Smith, Luella Gallagher, and Della Moffett there was a brief by *Brazeau & Brazeau* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau*.

For the respondent executor there was a brief by *Curran & Curran* of Mauston, and oral argument by *Thomas J. Curran*.

CURRIE, J. Testator bequeathed to his wife *"the share of my estate which she would receive under the law if I died intestate."* The trial court has in effect construed this language as if it read: "Such homestead rights in my homestead and right of dower in my remaining real estate as she would

receive if she elected to take under the law instead of this will." It will be noted that the trial court's construction provides for the widow receiving no part of the personal property of the deceased. However, the petition for probate alleges that the personal estate only had a value of $1,500. Therefore, it is possible that the personal estate will be entirely consumed in the payment of funeral expenses, administration expenses, and debts.

The wording of the residuary clause of testator's will indicates that he considered there was a residue of his estate left undisposed of by the bequest and devise to his wife which would go to his three sisters. This is so because the residuary clause is not made contingent upon any failure of the bequest to the wife, such as occasioned by her prior death. Furthermore, the surrounding circumstances such as the short period the parties had lived together and the institution of divorce proceedings and the filing of the counterclaim (which filing of the counterclaim occurred approximately one month prior to the drafting of the will), would also tend to indicate that he did not intend that his wife should receive his entire estate.

If we consider the testimony of the attorney who drafted the will, it is apparent that the wording of the bequest to the wife was the result of mistake, as the attorney did not intend to provide that the wife should take the share of the estate which she would receive under the intestacy laws of the state, but only that part of the estate which she would receive if she elected to take under the law, instead of under the will.

The problem which confronts us on this appeal, therefore, is not whether the construction placed upon the will by the learned trial judge is in accordance with the intent of the testator, but rather whether such attempted construction would amount to a reformation of the will.

The well-accepted general rule is that courts, in construing wills, do not have power to reform the same even in the case of an obvious mistake on the part of the testator, as they do

in the case of such instruments as contracts and deeds. 4 Page, Wills (lifetime ed.), p. 583, sec. 1604; 57 Am. Jur., Wills, p. 273, sec. 375; and Anno. 94 A. L. R. 26, at page 65. It makes no difference that the mistake was occasioned by the oversight or inadvertence of the draftsman of the will. 57 Am. Jur., Wills, p. 680, sec. 1046; Anno. 94 A. L. R. 26, at page 70.

This general rule is well stated in *O'Hearn v. O'Hearn* (1902), 114 Wis. 428, 432, 90 N. W. 450, as follows:

"The dominating rule in construing wills is that the intention of the testator is to be ascertained from the words used, in the light of all surrounding circumstances, and that intention given effect. *In re Donges' Estate,* 103 Wis. 497, 79 N. W. 786. *The court cannot reform the will by changing its language* or add provisions not written therein. It can only construe the instrument as written. *Sherwood v. Sherwood,* 45 Wis. 357." (Emphasis supplied.)

It seems clear that testator's words "share of my estate which she would receive under the law if I died intestate" cannot be construed to mean "share of my estate which she would receive under the law if she elected to take under the law instead of under the will," without transgressing the above-stated rule that a court cannot reform a will by changing its language but can only construe the language as written.

The opinion of this court in the case of *Will of Pfeiffer* (1939), 231 Wis. 117, 118, 285 N. W. 432, is illustrative of a true construction of language of a will, as distinguished from reformation. Testator in that case also was survived by a widow but no issue, and by his will he bequeathed to his wife "all that part of my estate which would legally go to her according to the statutes provided therefor" and then he bequeathed the residue in seven equal parts to other relatives. Mr. Justice NELSON, in the opinion of the court, pointed out that there were two sets of statutes making

provision for a widow, viz., one being the statute determining the widow's rights to the estate in the event of the husband dying without a will, and the other being the statute which governs the rights of the widow to the estate in the event the husband dies testate but she elects to renounce the will and take under the law. The conclusion reached was that testator's words "according to the statutes provided therefor" had reference to the last-mentioned statute governing a widow's rights in the event of her election to take under the law instead of under the will rather than to the intestacy statutes.

The facts in *Will of Pfeiffer, supra,* are readily distinguishable from the case at bar. The words used by testator "according to the statutes provided therefor" in the *Pfeiffer Case,* in describing the bequest to his widow, were ambiguous in that they could refer to either of two sets of statutes. In the instant case testator Gray's words "under the law if I died intestate" are not ambiguous, and in order to give them any other meaning than their plain import would require changing such words, and in so doing a court would be reforming the will rather than construing it.

Counsel for respondents cite the case of *Will of Bresnehan* (1936), 221 Wis. 51, 53, 265 N. W. 93, as supporting the conclusion reached by the trial court in the case at bar. Testator in that case was survived by his widow, and by John Bresnehan, whom he thought to be his legally adopted son. By his will testator bequeathed and devised to his widow "all that part of my estate to which she is entitled under and by virtue of the laws of the state of Wisconsin, the same as though no will had been by me made." He then bequeathed his homestead, subject to the homestead and dower rights of his widow, to his adopted son, John Bresnehan, and also bequeathed one third of the residue to John Bresnehan and two thirds to his sister. The adoption proceedings in the matter of the adoption of John Bresnehan were jurisdic-

tionally defective because of the fact that the wife of testator had not joined in the petition for adoption. The estate was insolvent so the appeal centered on the question of the disposition of the homestead. This court held that it was testator's intention to give to his wife her dower and homestead interests in the homestead, which is the interest she would have received under the law if the adopted son had been legally adopted and her husband had died without a will.

The construction of the will reached by this court in the *Bresnehan Case* was based upon the intent of the testator as gathered from within the four corners of the will itself. It was clear that testator considered John Bresnehan to be his adopted son because he so referred to him as such in the will. The share that the widow was entitled to receive in the homestead under the intestacy laws of the state, assuming John Bresnehan to be a legally adopted son, was her right to the enjoyment of the homestead so long as she lived and did not remarry, and that clearly was all that the testator intended she should take.

Respondents' brief cites authorities which hold that one of the canons of construction to be observed in construing a will is that the whole will must be considered in an attempt to correlate all provisions of it. In keeping with such principle it is urged that it is evident from the residuary clause of Bert L. Gray's will that he intended his sisters to share in some part of his estate, and therefore the court should so construe the will as to give effect to this residuary clause.

The Pennsylvania court in *Peterson's Estate* (1913), 242 Pa. 330, 89 Atl. 126, had before it for construction a will wherein the testatrix made an outright bequest to her husband followed by a residuary clause inconsistent with such bequest. In considering the effect of such residuary clause the court stated (242 Pa. 340, 89 Atl. 129):

"The fact that there is a residuary clause can in no wise limit or detract from what had been previously given in the

will; nor can such residuary clause have the effect of putting a construction on a previous clause of the will in order to create a residue."

In *Johnson v. Linstrom* (1904), 92 Minn. 8, 99 N. W. 212, testator died leaving a wife, but no issue. In his will he stated that his wife "shall have such share and part of my estate, both real estate and personal property, as she may be entitled to under the statutes of the state of Minnesota, as the same may provide, at the date of my decease." The will also contained a residuary clause by which the residue was bequeathed to a sister and a brother. At the time the will was made the intestacy laws of Minnesota provided that in the case of a husband who died leaving a widow but no issue the surviving wife was entitled to a life estate in the home-stead and a one-third interest in the remaining real estate. After making the will, but prior to the death of testator, the statutes were changed so as to give the widow the whole estate in case of intestacy. The court held that the will spoke as of the time of death and stated (92 Minn. 10, 99 N. W. 213):

"The fact that the testator assumed that there would be a residue is not sufficient to overcome the explicit declaration in the preceding section."

The decision of *Dealy v. Keatts* (1930), 157 Miss. 412, 128 So. 268, is also in point on this question. In that case the testatrix provided in her will for the sale of two cottages and out of the proceeds one tenth was given to her church "and the rest divided between the two granddaughters of my husband, Dr. J. R. Phillips (Mattie and Daisy Andrews) and the balance to Brother George's children." There clearly was an inconsistency because, if the nine-tenths balance of the proceeds were divided between the granddaughters, there would be nothing left to go to the brother's children. The Mississippi supreme court upheld the trial court's decision

that the brother's children took nothing. In its opinion the court said (157 Miss. 419, 420, 128 So. 270):

"The difficulty is that it [the will] provides for the disposal of a residue without creating one. It is not for the court, at all hazards, to furnish property in order that named individuals may take under a will. If the testator exhausts his estate in a legal manner, although he mentions another to take a residue, the latter fails in the face of the fact that no residue exists. . . . We cannot alter its meaning, nor supply words when it does not appear that they were omitted unintentionally; nor can we strike out words which have meaning or give the words used another and different meaning than that to which their use in the connection is applied. . . . The remainder over to include the children of 'Brother George' fails because of the lack of property to which it could be applied, and not from any ambiguity or repugnancy in the will of the testatrix."

We are constrained to conclude that the bequest and devise made by testator to his wife Mildred Gray, couched as it was in language giving her that share of the estate *"which she would receive under the law if I died intestate,"* was not ambiguous. Therefore, it was error for the trial court to admit over objection that part of the testimony of the attorney who drafted the will which related to the conversation which took place between testator and himself. Such conversation was offered for the purpose of contradicting and varying express language of the will, and not to explain it, and therefore was inadmissible. As stated by the author of the exhaustive annotation on the subject of the admissibility of extrinsic evidence in the construction of wills appearing in 94 A. L. R. 26, at page 31:

"The general principle is well settled that extrinsic evidence is not admissible to vary, contradict, or add to the terms of a will, or to show a different intention on the part of the testator from that disclosed by the language of the will."

Without such testimony of the scrivener there would be no basis for construing the will so as to attain the result reached by the trial court. While the surrounding circumstances existing at the time of the execution of the will would render it highly unlikely that the testator would have desired his wife to take his entire estate, and the residuary clause of the will itself establishes that testator intended there would be a residue to be received by his three sisters, nevertheless, the courts are without authority to reform and remake the will and cut down the bequest and devise to the widow so as to leave a residue to pass under the residuary clause.

The adherence in this case to the rule, that courts have no authority in the guise of construing a will to reform the same so as to correct a mistake, results in an outcome that the members of the court who join in this majority opinion wish could be avoided, because it means that testator's estate will be distributed in a manner not in accord with his true intent. However, we consider it would be establishing an extremely dangerous precedent not to adhere to this well-recognized rule and thereby let down the bars so as to permit explicit language of a will to be varied by extrinsic evidence (in this instance parol testimony).

*By the Court.*—Order reversed and cause remanded with directions to enter an order construing the will so as to bequeath and devise the entire estate to the widow Mildred Gray.

FRITZ, C. J. (*dissenting*). The evidence introduced on the trial established: That Bert L. Gray and Mildred Gray were married on August 24, 1943, and for four or five months they resided on his farm, and after that she left his home and they did not live together thereafter. On March 20, 1944, he commenced an action for a divorce from his wife and she filed a counterclaim for divorce. On October 5, 1944, he asked to have the action dropped and there were no further

proceedings in the divorce action. They did not resume cohabitation. On November 8, 1944, he executed his last will, which was prepared and witnessed by his attorney; and upon the testator's death on May 27, 1952, his will was admitted to probate on July 1, 1952, without any objection.

In so far as here material the third paragraph in the will provided: "I herewith give, devise, and bequeath unto my wife, Mildred Gray, the share of my estate which she would receive under the law if I died intestate." The fourth paragraph of the will provided: "I herewith give, devise, and bequeath all of the rest and residue of my estate to my three sisters, Ida Smith . . . , Luella Gallagher . . . , and Della Moffett . . . , in equal shares, share and share alike, and to their heirs and assigns forever."

Over the objection by Mrs. Gray's attorney in the proceedings for the admission of the will to probate his attorney testified: That Bert L. Gray said he did not want to give anything to Mrs. Gray; that his attorney informed him he would have to make provision for her; and that if he did not make a provision for her, she would take as much as if the testator died without making a will, and would take the share which is provided by statute for her, that the testator should give her the statutory allowance which she would be entitled to; and that as to the rest of his property, if he wanted it to go to his sisters, that could be done.

He testified that he then drafted the will in accordance with Bert L. Gray's instructions. On the hearing for the construction of the will, testimony was duly taken; and on April 10, 1953, the court entered an order construing the will and determining that Mrs. Gray is entitled to her dower and homestead rights in the testator's estate; and that under the will his three sisters were entitled to the rest of his estate.

Upon reading the entire will it is evident that the testator's final intention was that his widow was to receive her dower and homestead rights, and after that all of the rest and re-

mainder of his estate was to be divided equally among his three sisters. No other conclusion as to his intention can be reached from the whole will itself. If appellant's contention that the widow is entitled to the whole estate were correct, then there would have been no need for a will at all, since he had no children, and by descent the entire estate would then pass to his widow. Likewise, there would be no need for any residuary clause since, if his wife predeceased the testator, his sisters would have received the entire estate, as they were his next of kin. The testator obviously did not want his wife to receive a larger interest in his estate than he was by law required to leave to her; and therefore he provided in his will that the residue of his estate shall go to his next of kin,—his three sisters. It was the duty of the court to ascertain and execute,—as the court did,—the intent of the testator in discharging his right to make a will. The application of rigid, technical, and uncompromising rules of law to the problem under consideration would be a violation of the trust imposed upon the court. If any such other construction were resorted to, the words of the third paragraph of the will, standing alone, would result in an unintended and unlawful forfeiture of the testator's entire estate to the widow. Such an unwarranted construction could be reached only by concluding that the intent of the testator as to the distribution of his estate is contained entirely in, and confined to solely the third paragraph of the will. That could be reached only by ignoring the rule, that the "intent must be determined from the four corners of the will, if that is possible." As is stated in 57 Am. Jur., Wills, p. 735, sec. 1137:

"The intention of a testator is to be collected from the whole will, and from a consideration of all the provisions of the instrument and every part thereof, taken together, rather than from any particular clause, sentence, provision, or form of words. The intention is not to be gathered from detached portions alone, and the court should not consider

merely the particular clause of the will which is in dispute. The language employed in a single sentence is not to control as against the evident purpose and intent as shown by the whole will. In other words, a will is not to be construed *per parcella*, but by the entirety. As sometimes expressed, the intent is to be ascertained from a full view of everything within the 'four corners of the instrument.' If the whole will clearly indicates the testator's intention, the rules of law which aid the construction of wills need not be invoked."

The case at bar is controlled by the rule applied in *Will of Bresnehan*, 221 Wis. 51, 265 N. W. 93, and *Will of Pfeiffer*, 231 Wis. 117, 285 N. W. 432. In the *Bresnehan Case, supra*, the testator willed to his wife all that part of his estate to which she would be entitled "the same as though no will had been by me made" which was followed by a provision giving the residue of the property to an adopted son and a sister of the testator. In arriving at its decision in the *Bresnehan Case*, the court referred to the decision in *Will of Richter*, 215 Wis. 108, 111, 254 N. W. 103, in which the court stated:

"Certain rules of construction may be passed with simply a statement of them, as they are too well established to warrant extended consideration. The first is that all rules of construction yield to the cardinal rule that the words of a will are to be construed so as to give effect to the intention of the testatrix, which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testatrix at the time of its execution."

As stated in 1 Page, Wills (2d ed.), p. 1374, sec. 811:

"The courts approach the problem of construing a will with a *prima facie* assumption that the testator, in drawing and executing his will, had a purpose which was clear, definite, and consistent throughout; and they will attempt to find this intention by construing every part of the will with reference to every other part, so that, if possible, the court

will construe the will as a whole, and give effect to every provision of the will."

In the light of the circumstances surrounding the testator at the time of the execution of his will, we are compelled to conclude that the will must be construed so as to give effect to both the third and the fourth paragraphs of the will; and hold that it was the testator's intention to give to his wife her dower and homestead interests in the home, which interest she would receive under the law if the deceased had left no will. If the trial court were to adopt the view of the appellant it would in fact be holding as meaningless the fourth paragraph of the testator's will. This can no more be done in the case at bar than it could be in the cases of *Will of Bresnehan, supra,* and *Will of Pfeiffer, supra.* Appellant's counsel attempt to draw a fine line of distinction between the words "same as though no will had been by me made," and those used in the will of Bert L. Gray. If no will had been made, the decedent would have as a matter of law died intestate. Certainly no logical distinction can be drawn between the two phrases used in the two wills. Both the *Bresnehan* and the *Pfeiffer Cases* are so closely in point, and so identical in principle to the case presently before the court, as to be conclusive unto themselves and require no extrinsic evidence to support their conclusion. So likewise in the case at bar all of the extrinsic evidence offered and received, supports the conclusion reached from the reading of the whole will, that the testator intended that his widow should receive only such property rights as the law required him to leave to her.

"When intention of the testator is not clear from a consideration of the entire will, the court may, for the purpose of placing itself as nearly as possible in the testator's place, receive as an aid to construction evidence of the circumstances which surrounded the testator at the time of making the will." 2 Gary, Wisconsin Probate Law (5th ed.), p. 60, sec. 600.

As stated in *Will of Fouks,* 206 Wis. 69, 73, 238 N. W. 869:

"In construing wills there are certain rules which must be kept in mind, all of which yield to 'the cardinal rule that the words of a will are to be construed so as to give effect to the intention of the testator, which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testator at the time of its execution.' *Ohse v. Miller,* 137 Wis. 474, 119 N. W. 93; *Donges' Estate,* 103 Wis. 497, 79 N. W. 786. 'Superior to all other rules for construing wills is the one that the intention of the testator should prevail so far as that can be read out of the language used to express it.' *Will of Owens,* 164 Wis. 260, 263, 159 N. W. 906; *Will of Ehlers,* 155 Wis. 46, 48, 143 N. W. 1050." *Will of Pfeiffer, supra* (p. 119).

As stated in *Will of Rice,* 150 Wis. 401, 444, 136 N. W. 956, 137 N. W. 778:

"The right to make a will is more sacred than the right to make a contract. The latter, as evidenced by the writing, may be judicially reformed or set aside upon equitable ground. The former cannot. *Machem v. Machem,* 28 Ala. 374. The court and parties must take it as they find it and,—if valid, abide by the intent embodied in it so far as that can be discovered. There is no judicial power even to correct a will which extends beyond the field of construction and interpretation. 1 Pom. Eq. Jur. (3d ed.) sec. 371, note.

"Said the eminent Chief Justice GIBSON, in *Bash v. Bash,* 9 Pa. St. 260, 'Every sane man must be allowed to make his own contract as well as his own will.' A court might as well usurp the functions of making wills for the dead as contracts for the living. In *Greenwell v. Greenwell,* 5 Ves. Jr. 194, under most distressing circumstances, a court of equity allowed a slight departure from the terms of the trust, practically, on the theory that, in the changed situation, it was really carrying out the presumed wish of the testator, and, only then, upon consent of all parties interested, all being

treated alike. The lord chancellor remarked: 'I fear, if I should make a decree, it would be my will, and not the testator's;' but, his scruples were overcome upon the consideration suggested. . . . In *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103, this court said:

" 'Breaking a will is very much like making one;' imposing upon the testator a rule for distribution of his estate 'against his solemn wish in dying.' 'Everyone should have the same power to dispose, by will, after his death, in accordance with his own wishes, of whatever he may leave behind him in his own sole right, as he had in life to dispose of it by contract or gift. And it is as much the duty of courts to uphold and enforce his will after death, as to uphold and enforce his contracts made during life.'

"The right to make a will is very ancient and considered as incidental to the right to acquire property and so one of the inherent rights guaranteed by the constitution. Its recognition antedates common and civil law. It is as ancient as any sort of civilization. It has been held sacred in all nations and under all conditions. Schouler, Wills (3d ed.) secs. 12–17; 30 Am. & Eng. Ency. of Law (2d ed.) 549.

"At the time of the adoption of our fundamental law no right was more firmly intrenched in the policy of this country or significantly a part of the common law, than that to make a will. Therefore it was guaranteed by sec. 1, art. I of the constitution and was also made fundamental by sec. 13, art. XIV.

"This court said in *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, the common-law conception of the right of persons to control the disposition of their property after death, subject to legislative regulation, is one of those rights referred to in the words of the constitution:

" 'All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; and to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.' Art. I, sec. 1.

"Nowhere, at any time, has that right been given greater dignity than in *Nunnemacher v. State.* Its history was there

traced as a birthright from the first born and was established as of undoubted constitutional recognition and beyond any earthly power, except that of the people in an original effort to form a government, to take it away."

Inherent therefore in the right to make a will there is a constitutional right to have one which is validly executed, and carried out according to the intent of the testator. His intent is to govern, and to get at that intent the instrument may be construed in the light of the evidence as to the extrinsic circumstances and facts which may enable the court to determine the true meaning of the words used. *Hopkins v. Holt,* 9 Wis. *228, *231; *Will of Levy,* 234 Wis. 31, 34, 289 N. W. 666, 290 N. W. 613. As stated in *Estate of Holmes,* 233 Wis. 274, 279, 289 N. W. 638:

"The meaning and effect of a will must be derived from its four corners and any attending circumstances that throw light upon the intent of the testator. This rule is so firmly fixed and understood that no citation of authority is needed to support it. The intent of the testator, whenever it can be drawn as above stated, must determine and control any power of disposition given in the will. . . ."

The testimony of the widow alone is sufficient to establish the cause and basis for the intent of the testator in disposing of his estate as he did in his will. He and his wife married only in the eyes of the law. At the time of the marriage he was sixty-eight years of age and his wife was thirty-three years of age, and their relationship was not the normal one of husband and wife, and they lived together only four or five months after their marriage. She testified that she left the deceased approximately four months after the marriage, that an action for divorce was instituted by the testator, and contested by her answer; but thereafter abandoned by the testator. The testator's will was executed on November 8, 1944, and although his wife lived in and about the commu-

nity in which the testator resided, they at no time resumed their marital relationship. The testator had acquired all of his assets and estate prior to the marriage of the parties. She testified that she did not help the testator on his farm after leaving him in December of 1943; that she left him for many reasons, the chief of which was that they could not get along. Certainly that type of marital relationship for a duration of only four to five months in 1943,—some nine years prior to the death of the testator,—is not the kind of relationship which would induce a husband to leave to his wife all of his estate accumulated prior to the marriage. Nowhere in the record is there evidence of any facts or circumstances which would indicate any reason whatsoever for the testator to desire to do anything other than what he did by his will, namely, to leave to his wife only that which the law required him to do, and to leave the balance of his estate to his next of kin,—his three sisters.

It is, therefore, the position of the executor that the construction given the last will and testament of Bert L. Gray by the trial court must be sustained because: (1) It is the only construction which can be drawn from the reading of the instrument as a whole, and which would be consistent with the language, wording, and form used by the testator. (2) It is the only construction which is consistent with the extrinsic evidence offered and received concerning the circumstances of the relationship existing between the testator and his wife, who lived with him for only a period of four to five months. (3) The testimony of the attorney who drafted and witnessed the execution of the instrument admits of no other conclusion than that it was the intention of the testator that his wife receive nothing; but that the testator was advised that the law provided that she could not be wholly disinherited, the intention of the testator was that she receive only such an interest as the law required him to leave to her. (4) And the construction by the trial court establishes the

real will of the testator, and that it must be carried out according to his intention in that manner.

I am authorized to state that Mr. Justice FAIRCHILD and Mr. Justice BROADFOOT concur in this dissenting opinion.