Will of Emmerick: Emmerick, Appellant, vs. Dempze, Executor, and another, Respondents.

*November 8—December 7, 1954.*

For the appellant there was a brief by *E. D. Helke* of Nekoosa, and *Graves & Chambers* of Wisconsin Rapids, and oral argument by *Mr. Helke* and *Mr. Lloyd L. Chambers.*

For the respondents there was a brief and oral argument by *John J. Jeffrey* of Wisconsin Rapids.

MARTIN, J.   It was the lower court's view that the testatrix intended her two sons to be equal stockholders in the Emmerick Company after her death; that Clarence's acquisition of 40 shares from an outside source must be considered in making the distribution under decedent's will such as would cause John to have an equal number of shares.

In our opinion the testatrix intended her estate to be divided equally between the sons. It is presumed under the law that they were equal in her regard and affection, and there is nothing in the record which indicates otherwise.

It is elementary that one making a will can deal only with what he has. The total outstanding stock of the Emmerick Company was 160 shares owned 40 shares each by four different stockholders, of which testatrix was one. There is no evidence to show that she had anything in mind at the time of making her will other than the equal division between the sons of the stock *owned by her.* Control of the corporation was not dependent upon her stock. To say that she intended, by disposition of her stock, to make them equal stockholders in the company ignores the fact that she owned only 40 out of 160 shares. In order to accomplish such an intention she would have had to own all of the stock. If Clarence had in fact purchased 80 shares from the other stockholders instead of 40—or if John had acquired the 40 outside shares instead of Clarence—it would have been impossible for her to effect an equalization of their holdings by the dis-

tribution of her 38 shares. In order to spell her intent out of the words she used in the will the interpretation placed upon them should be that which shows an intent capable of fulfilment.

Respondents place considerable reliance on *Estate of Gray* (1953), 265 Wis. 217, 61 N. W. (2d) 467. In that case, where the testimony of the scrivener made it appear that the wording of the bequest to the wife was the result of mistake, this court held that the testator's words could mean only one thing and that a construction of the will to carry out an intent other than that clearly expressed would amount to a reformation; that courts may not reform a will even in the case of mistake. The situation is not comparable to that before us. While Anna Emmerick's language may be susceptible of two interpretations, no reformation is involved in determining which will carry out her true intent. We need only apply the familiar rule that "in construing wills, all rules of construction yield to the cardinal rule that the language of a will should be so construed as to give effect to the intention of the testator, if that intention may be ascertained from the language of the will itself, considered in the light of the surrounding circumstances." *Will of Fouks* (1931), 206 Wis. 69, 73, 238 N. W. 869; *Will of Richter* (1934), 215 Wis. 108, 111, 254 N. W. 103; *Will of Grotenrath* (1934), 215 Wis. 381, 384, 254 N. W. 631; *Will of Pfeiffer* (1939), 231 Wis. 117, 119, 285 N. W. 432.

Applying that rule we cannot escape the conclusion that it was the testatrix' dominant intent to divide all her property equally between the two sons. At the time of making her will she had already disposed of two shares of stock to John. By clothing her intent as to the stock's distribution in the general terms, "it shall be determined how many shares in said companies each of my sons shall own at the time of my death and then the shares bequeathed by this will shall be

divided so that the shares owned by each son at the time of my death and the amount bequeathed by this will shall give each son an equal number of shares in each of said companies," she was making it possible to dispose of further shares of stock to either son before her death and yet, without changing the will, effect equal distribution at her death.

The stock in question had passed from the boys' father to her—it was a family holding—and she meant it to be divided equally between them, as she meant that all of her estate should be, with the exception of the bequest to the niece. Having in mind the fact that she had previously given to John a portion of her stock to qualify him as an officer of the companies, it was necessary to provide for equalization to Clarence in her will. John owning two of her shares in the Emmerick Company at the time of her death, an equal distribution of her stock can be effectuated by the distribution of 20 shares to Clarence and 18 shares to John.

There was no objection to the distribution of the Gaynor Company stock, which was made 23 shares to John and 25 shares to Clarence. To arrive at an equal division of the entire estate between the sons, property of a value equal to the two shares of Gaynor stock and two shares of Emmerick stock by which Clarence's portion will exceed that of John must be added to John's share of the estate out of the remainder. We must assume, since there is nothing in the record to dispute it, that when testatrix gave the shares to John she surrendered title to them and they cannot be considered a part of her estate at her death. From the language used in the will it is obvious that the testatrix recognized the distribution of the stock under such bequest would not be equal. Yet the intent of the testatrix is plain that all of her property not otherwise bequeathed "or disposed of by me during my lifetime" shall be transferred "equally to my two

sons" and that intent is reiterated in the final sentence of the paragraph that "All other property of which I shall die seized is to be divided share and share alike between my two sons. . . ." Appellant himself urges that should the distribution of the stock be unequal the share in the remainder of the son receiving the larger portion of stock should be reduced to effect an equalization. The dominant intent of the testatrix requires such equalization.

. *By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.

CURRIE, J. (*dissenting*). I agree with the conclusion stated in the last paragraph of the majority opinion that, if one son is to be assigned more shares of the capital stock of the Emmerick Cranberry Company than the other son, then the latter must receive cash or other assets equal in value to the excess shares received by the former. Such result seems to be required because the paramount intent expressed by testatrix in the paragraph of the will before us for construction is that each son share equally in the distribution of the residue of her estate.

However, I must respectfully dissent from the holding that the 40 shares of stock of the Emmerick Cranberry Company which Clarence and his wife purchased and owned in joint tenancy must be ignored in determining the distribution to be made in the estate of the shares of stock of such company owned by testatrix at the time of her death. The will employs the phrase "how many shares . . . each of my sons *shall own* at the time of my death." It contains no qualifying language from which it can be inferred that said shares already owned by a son, which are to be taken into consideration in making a division of said shares so that each brother

will own an equal number, is restricted to shares previously obtained from testatrix and not from another stockholder. If such were the intent of testatrix it would have been a simple matter to have so stated in the will. By reading such qualification into the will the majority opinion effects a reformation of clear and unambiguous language. This court has only recently given adherence to the well-recognized and generally accepted rule that courts should not reform language of a will that is clear and unambiguous. *Estate of Gray* (1953), 265 Wis. 217, 61 N. W. (2d) 467.

The testimony is undisputed that some months prior to the death of testatrix she learned of Clarence's purchase of the 40 shares, and commented concerning the same. Nevertheless, she took no action to change her will. From this it might be reasonably inferred that testatrix was satisfied that the will as it stood adequately expressed her intent as to the division to be made of her shares in the Emmerick Cranberry Company in view of the changed condition resulting from Clarence acquiring such 40 shares.

In joint tenancy, unlike tenancy in common, the ownership of each cotenant extends to the whole property until such time as there is an alienation of his interest therein, and not merely to an undivided half. Therefore, the learned trial judge was correct in determining that Clarence owned 40 shares of stock at the time of her death and John two shares, and, in order to carry out the expressed intent of testatrix, the 38 shares owned by her at the time of her death should be assigned to John.

I am authorized to state that Mr. Chief Justice FAIRCHILD and Mr. Justice BROWN concur in this dissent.