Estate of Sherburn S. Merrill: Haugan, Executor, and others, Appellants, vs. Chester and others, Administrators, Respondents. (Application for construction of will.)

*May 10—June 18, 1928.*

362

For the appellants there was a brief by *Wheeler, Witte & Bark; Lines, Spooner & Quarles; Ernst von Briesen,* and *Olaf I. Rove,* all of Milwaukee, and oral argument by *Mr. von Briesen* and *Mr. Lyman G. Wheeler.*

For the respondent Marion Merrill Chester there was a brief by *Hoyt, Bender, McIntyre & Hoyt* of Milwaukee, and oral argument by *Frank M. Hoyt.*

For the respondents there was a brief by *Timothy J. Hannan* of Milwaukee, attorney for Sherburn M. Becker, and *William F. Hannan* of Milwaukee, guardian *ad litem* for Marion Merrill Smith and others, minors.

DOERFLER, J. One of the most important functions which a person may perform during the period of his life is the making and execution of a will by which he disposes of his material possessions to those whom he deems the legitimate objects of his bounty. Sherburn S. Merrill, a man of advanced years, possessing keen intellectual faculties and a ripe judgment (all demonstrated by his great success achieved as an officer and a builder of a mighty railway system), in the year 1883 made and executed his last will and testament, by which he attempted to dispose of all of his estate to persons related to him by blood ties. In the execution of this solemn document he had the aid and assistance of counsel who occupied a pre-eminent position at the bar. The clarity of the language employed in the will, and the manner in which the testator, with the aid of counsel, attempted to cover the minutest details involved in the com-

prehensive plan of distribution covering all conceivable contingencies which might arise, are persuasive that when this laborious task was accomplished the testator was of the opinion that he had performed a duty so thoroughly as to preclude the idea that the instrument would ever need a judicial construction. The executors and trustees who were appointed to co-operate with his wife were men of great initiative and business experience and ability, and he wisely reposed in them the highest confidence, and directed that they be required to serve without bonds. After forty-two years of able and faithful administration, and when a time had arrived where his aged widow was nearing the close of her life, and where the estate was about to be closed, the conflicting views of those claiming to be interested in the estate necessitated the petition herein; which has for its purpose a construction of the testator's will and a judicial determination of his intentions, all of which demonstrates that the human power of expression, even under the most solemn exigencies, may be inadequate and imperfect.

The court below sustained the respondents in their contention that the estate of Frederick F. Merrill and those claiming under his will had no interest in the remainder of the trust estate created for the benefit of the widow, Mary E. Merrill, and that their interest depended upon the contingency of Frederick surviving his mother. On the other hand, counsel for the appellants contend that Frederick became fully vested in that portion of the estate intended for him, at the time of the death of his father, subject only to a partial defeat thereof by reason of his conduct.

In the construction of wills a court is primarily concerned with the ascertainment of the intention of the testator. Ordinarily, precedents afford but little aid; if they are helpful they are so because of the similarity of the language employed. While in many cases the particular language contained in a certain paragraph of a will relied upon as a

precedent may be identical or similar to that contained in the will under consideration, the meaning given to such language in the one case may differ from that of the other, by reason of other provisions contained in the will. Therefore, the entire will ordinarily must be given careful attention in order that the real intent of the testator may be ascertained and established. As is said in *Will of Cramer,* 183 Wis. 516, 198 N. W. 382:

"In the construction of wills the principal canon to be observed is to ascertain the intention of the testator from a review and consideration of the entire will, and 'that in doubtful cases the law leans in favor of an absolute rather than a defeasible estate, and of a vested rather than a contingent interest; and that, while the general rule is that a gift will be deemed contingent when it is found only in a direction to divide at a future time, this is subordinate to the primary rule that the intent, to be collected from the whole will, must prevail.' *Smith v. Smith,* 116 Wis. 570, 93 N. W. 452."

To these rules might also be added that where a testator leaves a will, the presumption is that all of his property has been disposed of thereunder, and that no portion of it descends as intestate property. See, also, *Yearnshaw's Appeal,* 25 Wis. 21, and *Will of Ritchie,* 190 Wis. 116, 208 N. W. 880, cited in respondents' brief.

What then were the testator's intentions with respect to the question herein involved, as manifested by his entire will? It is clear that his first consideration consisted in making a proper disposition for the benefit of his widow. Provision having been made for her to his satisfaction, he then concerned himself with a disposition in favor of his children. Next, under certain conditions, he recognized as objects of his bounty his grandchildren; thereafter, under certain conditions, his next of kin. In article I of the will the testator gives to his wife, Mary E. Merrill, a life estate in the home-

stead and in all the lands used as part thereof, consisting of
fifteen acres, and he directs his executors to set apart the
sum of $200,000 and to pay over from year to year, at the
end of each year, the interest or income derived from said
sum during the preceding year, as long as she shall live. In
addition to the foregoing life estate, he bequeaths to her
absolutely the sum of $100,000 and the entire household
furniture and effects, together with the horses and carriages.
He then sets up for his widow a standard of living after his
death, being that which she enjoyed during his lifetime,
and then directs that if it should develop that the disposition
made for her benefit should turn out to be inadequate, that
the executors pay over to her from year to year from the
funds in their hands what in their judgment will be suffi-
cient to furnish her with such home and support. He also
provides that if his wife predeceases him, then the property
and interests left to her shall pass under article VI to the
executors, and be disposed of as part of the residuary estate
included in said article.

The next important disposition of the will concerns itself
with provisions for the benefit of children and grandchildren,
and is contained in article VI of the will. By this article
the residue of the testator's property, including the remain-
der in the property in which the widow has a life estate, is
given in trust to the executors, with broad powers to sell,
lease, convey, and manage so as to make it yield a safe and
reasonable income. The will then provides as follows:
"My estate herein given to my said executors shall be finally
disposed of by them as herein directed."

The next four succeeding subdivisions of article VI, de-
nominated first, second, third, and fourth, require the exec-
utors, as soon as convenient after the testator's death, to set
apart for each child what in their judgment is equivalent to
one fourth of the residuary estate. The provisions for the

two daughters are the same. Each is to receive the interest on her one fourth annually as long as she shall live. In the event of the death of a daughter without leaving issue her surviving, then the one fourth is to be added in equal parts to the shares of his remaining three children. Provision is also made for the benefit of a child or children of a deceased daughter, both with respect to interest and income from the share of the daughter and the final disposition of the principal. These provisions in detail may be readily ascertained by reading subdivision "First" of article VI, a copy of which is set forth verbatim in the statement of facts.

The third subdivision of article VI also requires the executors to set apart what is equivalent to one fourth of the residuary estate for the benefit of the son Frederick, and directs that the interest from said one fourth shall be paid to him until he arrives at the age of twenty-one years. At that time he is to be paid the sum of $20,000 and the interest on the balance until he becomes thirty years of age, at which time one half of said balance shall either be paid or conveyed to him; all upon the condition, however, that in the judgment of the executors his habits and mode of life are such as to render it proper. If, however, his habits and mode of life at that time, in the judgment of the executors, are not such as to warrant such payment, then the amount shall be withheld. At the expiration of the further period of five years, the balance of said one fourth shall be paid or conveyed to Frederick, if in the judgment of the executors such payment would be proper, depending entirely upon his habits and mode of life; and should the executors conclude that such balance should not be paid for the reason that it would be unsafe or improper so to do, then there is to be paid to him yearly thereafter the interest only on such balance. Then follows what shall become of the unpaid portion of Frederick's one fourth that is withheld from him by reason of improper conduct or habits if he shall die without

leaving issue; also what shall become of the unpaid portion and the interest thereon if he shall die leaving issue and if the issue shall die or become extinct before it arrives at the age of twenty-one years.

The will then further provides that if Frederick should die before the time or times for the payment of one fourth shall elapse, leaving no issue him surviving; or, under the foregoing provisions, any part of said one fourth shall remain in the hands of the executors at the time of the death of Frederick and he shall die without leaving issue him surviving; or if he shall die leaving issue him surviving but such issue shall become extinct at any time during said period of twenty-one years after his death; or if he leave issue him surviving but such issue shall be extinct at the expiration of said period of twenty-one years, then and on the happening of either of said four contingencies the share of Frederick theretofore not paid or conveyed to him shall become a part of the shares intended for the other children, to be distributed among them as is provided in the will. Then follow provisions for the benefit of his brother and sisters in the event that they shall have deceased at the time of his death and leave issue surviving, etc. The will also further contains provisions for the benefit of Frederick's child or children left surviving him, etc.

Under the broad powers granted to the executors, the real estate left by the testator, together with part of the property in which the widow had a life estate, has been platted and sold. In order to accomplish the desired ends it became necessary in some instances to purchase additional property in order to complete the plat. All the platting and marketing of this property was accomplished with the result that the estate of the deceased derived large profits therefrom.

The lower court found, and it was conceded to be a verity in the case, that Frederick at all times led an exemplary life. Counsel for the appellants therefore strenuously contend

that Frederick's interest in the one-fourth part of the residuary estate became vested at the time of the testator's death; that he could only be divested of such interest by the happening of one of two events, viz.: first, if he died before the time for distribution arrived; and secondly, if in the opinion of the executors his habits and conduct were such as to make it unsafe or improper to pay or convey to him his share, in which event part or all of the balance of the principal, constituting the one-fourth part set aside for his benefit, after the payment of the $20,000 which the will directs shall be paid to him upon his arrival at the age of twenty-one years, may be withheld up to the time of his death, thereafter to be distributed among his brother and sisters or their issue, as is set forth in the will.

In the year in which the testator died Frederick became of age, and at the time of his death in 1925 he was sixty years of age. The widow survived her son Frederick by approximately two years, and her husband by forty-two years. It is therefore probable that when the testator executed his will he had no idea of the longevity of his wife; that he could not estimate with any degree of accuracy the length of time which would be required by the executors to liquidate and administer this large estate. The views in that regard entertained by him were mere estimates, and based upon speculation. But whatever may be our views upon that subject, no doubt can be entertained in the mind of the reader of the will but that the testator primarily concluded upon a disposition of his property so that his widow might be amply provided for. In addition to an absolute gift of $100,000 and of certain articles of personal property referred to in article I of the will, he devised and bequeathed to her a life estate in the homestead, and an additional fifteen acres, and $200,000 in money. This life estate was not to be cut down or modified at any time or for any purpose, to her detriment; on the contrary, express provision was

made in article I of the will, pursuant to which the executors were authorized to exercise their judgment as to whether or not she had sufficiently been remembered to enable her to maintain the standard of support and comfort which the testator afforded her during his lifetime; and if in their opinion such standard could not be maintained, they were authorized and directed to pay out of the corpus of the estate yearly, for life, such an amount as would enable her to maintain such standard.

The deceased was the general superintendent of the Milwaukee Road at the time of his death. Having explicit faith in the financial standing of the road, the executors concluded to invest for the benefit of her life estate the $200,000 held in trust for the widow, in preferred stock of the railway company. Prior to the receivership of the road, and during such proceedings, this stock declined in value upon the market until it was worth no more than approximately $47,000. Sherburn S. Merrill, as a business man, realized that an investment which might be perfectly sound at one period may in the course of time become a mere negligible asset; but regardless of every other person interested in the estate, the corpus of the estate was at all times during her lifetime subject to drafts by the executors for the benefit of the widow.

As has been heretofore indicated, under certain conditions Frederick was to receive the entire balance of his one fourth of the residuary estate upon his arrival at the age of thirty-five years, and the will provides that this balance shall be either paid or conveyed to him. In using the language "paid or conveyed" the testator and the scrivener evidently contemplated that that portion of the balance of the estate which consisted of cash should be *paid*, using that term in its usual acceptation, and that that portion which shall be *conveyed* might consist of securities or other property which is ordinarily transferred by some form of conveyance. As-

suming that the $200,000 held by the executors in trust at the time Frederick became thirty-five years of age was represented in actual cash on hand or in bank, a large portion of the income-producing property held in trust by the executors for the benefit of the widow would be withdrawn from the trust, resulting in a corresponding decrease in the widow's income. Here again we must emphasize the predominant idea in the testator's mind when he executed his will, to make ample provision for his widow. Had the widow died before Frederick arrived at the age of thirty-five years, no doubt could be entertained but that Frederick would have been entitled at that time to his full one-fourth share intended for him. But the widow survived many years after this thirty-five-year period had arrived.

Giving, therefore, full weight to the testator's language in his will, we arrive at the irresistible conclusion, in consideration of the entire will and the relative importance of all of its provisions and their relationship one to the other, that the real intention of the testator was that if the widow had died prior to Frederick's arrival at the age of thirty-five years, the balance of the one fourth intended for him should be paid to him. If, however, she survived her son, the estate in trust for her benefit during her lifetime should remain intact, and that if he predeceased her, under subdivision "Third" of article VI of the will, the share intended for him should not go to his estate, but shall pass to the testator's other children, or their issue or issues, as defined in the will.

The provisions of the entire will, barring the testamentary disposition in favor of his wife, evince a definite determination on the testator's part to strictly confine the distribution of his estate to his descendants, and then only does he consider collateral relatives if all of his children should die leaving no issue them surviving, or if said issue should become extinct before the trusts therein contained have been

executed, in which event he directs his executors to pay over or convey the property *then in their hands* to his next of kin, etc. Special attention is called to the provision emphasized in this paragraph, and its similarity in language to that contained in subdivision "Third" of article VI of the will, wherein it is said, among other things: "or under the foregoing provisions any part of said one fourth shall remain in the hands of my said executors at the time of the death of my said son," etc. Special attention is also further called to that part of the language in said subdivision "Fifth" of article VI wherein the testator contemplates a situation where the issue of his children should become extinct before the trusts contained in the will have been executed, in which event the collateral relatives shall take. The provision of said subdivision "Fifth" referred to in the preceding sentence is persuasive and nigh conclusive of the testator's wishes to the effect that no final distribution of the estate held in trust for the benefit of the widow shall take effect until the death of the widow, anything contained in the will tending to indicate the contrary notwithstanding.

The painstaking effort of the testator to declare his intentions in view of the various exigencies which might arise, and the plain and unambiguous language employed, bespeak the importance in the mind of the testator of his desire to confine strictly the distribution of his estate to his blood relatives. So pronouncedly and outstandingly does this desire appear from the language of the will as to be the equivalent of an express direction that "none but blood relatives shall participate in the distribution of my estate." So that it becomes evident that if it be determined that one fourth of the trust estate held in the hands of the executors at the time of the filing of the petition shall go directly to the estate of Frederick F. Merrill and those claiming under his will, one of the most pronounced and predominating intentions of the testator will be violated. He manifested throughout the

will no interest or consideration for the husbands of his daughters or the wives of his sons. In any event, he made it clear that if any part of the property derived from his estate shall ultimately pass to others than those related to him by blood, such result should only follow after the property had passed out of the control of his executors and had become that of his children or their issue. The construction thus placed upon the will reflects, to our view, the spirit of the document, even though it may be said that in some instances it conflicts with the letter. So construed, the will becomes harmonious and effective.

There is scarcely a will presented for probate in which vast interests are disposed of, and where the administration covers a long period of time, especially where trust estates are created which must be administered, where it does not become necessary at some time to apply to the court having jurisdiction for a judicial construction or for direction, and the present will is no exception. The respective counsel for the various parties herein, by their briefs and argument, have been of great aid to the court. The very lawyerlike and logical argument in the brief of counsel for the appellants has been duly appreciated. We have arrived at the conclusions herein after careful consideration of the entire matter in an effort to place ourselves as nearly as possible in the position of the testator when he executed the will, in order to arrive at his intentions, with the result heretofore expressed.

*By the Court.*—The judgment of the lower court is affirmed.