WILL OF PFEIFFER: GUERIN, Executor, Appellant, vs. UPHOFF, Executor, and others, Respondents.

*March 8—April 11, 1939.*

*Russell A. Clark,* attorney, and *Ernst von Briesen* of counsel, both of Milwaukee, for the appellant.

For the respondents there was a brief by *Henry Lockney* of Waukesha, and *Herbert C. Bartelt* of Milwaukee, attorneys, and *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee of counsel, and oral argument by *Mr. Lockney, Mr. Gerald P. Hayes,* and *Mr. Bartelt.*

NELSON, J. William H. Pfeiffer died on June 27, 1934, leaving a last will and testament which was thereafter admitted to probate. He left surviving him his widow, Johanna

Pfeiffer, as his sole heir at law. Johanna Pfeiffer was William H. Pfeiffer's second wife. She married him in 1921, and continued to reside with him until his death. She died in January, 1935, at the age of about sixty-four years. It appears from her petition for widow's allowance, dated November 1, 1934, that she had been in poor health for more than a year, had suffered severely from neuritis during all of that time, had been confined to her bed from time to time and had required medical attention at least once every week. The will of William H. Pfeiffer, deceased, which was construed by the court, was dated April 24, 1933. It was drawn by a layman and was found to have been properly executed. William H. Pfeiffer left an estate, appraised at $48,952.24. The estate consisted of his homestead, appraised at $10,000, but subject to a mortgage of $6,000, other real estate appraised at $38,000, and personal property appraised at $952.24. The will, after first providing for the payment of his just debts, expenses of his last sickness and funeral, provides:

"*Second.* I give, devise and bequeath unto my wife, Johanna Pfeiffer, all that part of my estate which would legally go to her according to the statutes provided therefor.

"*Third.* All the rest, residue and remainder of my estate shall be divided into seven equal shares, as follows: One share to go to my sister, Lydia Yoost; one share to my sister, Annie Pfeiffer; one share to my sister, Katherine Uphoff; one share to be divided among the heirs of my deceased brother, John Pfeiffer; one share to be divided among the heirs of my deceased brother, Gottlieb Pfeiffer; one share to be divided among the heirs of my brother, Charles Pfeiffer, and the remaining share to be divided among the heirs of my brother, George Pfeiffer."

The county court concluded:

"One: That it was the intent of the testator as set forth in his said last will, to give to his widow, Johanna Pfeiffer, only such interest in and portion of his estate as she would take under the statutes of the state of Wisconsin had testator died intestate, leaving children surviving him.

"Two: That it was the intention of the testator, as set forth in his said will, that all the rest, residue, and remainder of his estate, after so providing for the widow, should be divided into seven equal shares, one share to go to each of three surviving sisters mentioned in said paragraph third, and one share to the surviving children of each of the four deceased brothers mentioned in said paragraph third; that it was not the intention of the testator that the surviving widows of such deceased brothers, or any of them, should take an interest therein and they took no interest therein."

The executor of the will of Johanna Pfeiffer, deceased, contends that the court erred in so construing the second and third paragraphs of the will. In support of his assignments of error he contends that under the second paragraph Johanna Pfeiffer, as surviving widow, took all of the estate since she was his sole heir at law. Secs. 237.01, 237.02, and 318.01 (1), Stats. Under those sections Johanna Pfeiffer, as widow, had there been no will, clearly would have taken the entire estate.

All of the persons mentioned in the third paragraph of the will contend that it was the intention of the testator to give to his widow only a part of his estate and the residue in equal one-seventh shares to his three sisters and to the heirs respectively of his four deceased brothers.

We have often said that "in construing wills, all rules of construction yield to the cardinal rule that the language of a will should be so construed as to give effect to the intention of the testator, if that intention may be ascertained from the language of the will itself, considered in the light of the surrounding circumstances." *Will of Fouks,* 206 Wis. 69, 238 N. W. 869; *Will of Richter,* 215 Wis. 108, 254 N. W. 103; *Will of Grotenrath,* 215 Wis. 381, 384, 254 N. W. 631; and other cases cited in those opinions. The surrounding circumstances are rather limited. Johanna Pfeiffer was a second wife. She, however, lived with William H. Pfeiffer for a period of about thirteen years. No child was born of the

marriage and none adopted. In 1934, the widow was sixty-four years of age. On November 1, 1934, which was about four months after the death of her husband, she applied for a widow's allowance. It appears from the petition that she was in poor health, that she had suffered severely from neuritis for more than a year and had been confined to her bed from time to time as a result of her affliction. At the time the will was executed the testator, of course, knew that his wife was his sole heir at law.

It is clear from the will that the testator intended to devise and bequeath to his wife only a part of his estate and the residue thereof to his sisters and the heirs of his deceased brothers. He gave to his wife "all that part" of his estate and "all the rest, residue and remainder" to his relatives mentioned in the third paragraph.

The precise question for decision is: What did the testator intend by the language: "All that part of my estate which would legally go to her according to the statutes provided therefor." It is clear that he intended that she should have only a part of his estate, and that that part was such as would legally go to her according to the statutes provided therefor.

Sec. 237.01, Stats., provides in part:

"When any person shall die seized of any lands, tenements or hereditaments or any right thereto or entitled to any interest therein, in fee simple or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, except as provided in section 237.02, in the manner following: . . . .

"(2) If he shall leave no lawful issue, to his widow. . . ."

Sec. 237.02, Stats., in part, provides:

"*Homestead, how to descend.* When the owner of any homestead shall die, not having lawfully devised the same, such homestead shall descend, free of all judgments and claims against such deceased owner or his estate except mortgages lawfully executed thereon and laborers' and mechanics' liens, in the manner following:

"(1) If he shall have no lawful issue, to his widow."

Sec. 318.01 (1), Stats., provides as follows:

*"Distribution of personalty.* (1) *Residue.* The residue, if any, of the personal estate of any intestate and the residue of the personal estate of a testator, not disposed of by his will and not required for the purposes mentioned in section 313.15, shall be distributed in the same proportions, and to the same persons, and for the same purposes, as prescribed for the descent and disposition of real estate in chapter 237, except that when the deceased shall leave a widow and lawful issue the widow shall be entitled to receive the same share of such residue as a child of such deceased, when there is only one child, and in all other cases one third of such residue."

When the testator made his will did he have in mind that the statutes just recited should be operative? They are obviously applicable to lands and a homestead not lawfully devised and to personal estate not disposed of by will. Since the testator did make a will and clearly intended to devise his lands and to dispose of his personal estate, it cannot, in our opinion, be held that he had in mind those statutes which are operative as to lands and personal estate not devised or disposed of by will, and he therefore could not have intended that all of his estate would go to his widow.

Sec. 233.13, Stats. 1933, provides:

*"Election between dower and devise.* If any lands be devised to a woman or other provision be made for her in the will of her husband she shall make her election whether she will take the lands so devised or the provisions so made or whether she will claim the share of his estate provided in section 233.14; but she shall not be entitled to both unless it plainly appears by the will to have been so intended by the testator."

Sec. 233.14, Stats. 1933, provides:

*"When deemed to have elected to take devise, etc.* When a widow shall be entitled to an election under either sections 233.12 and 233.13 she shall be deemed to have elected to take such jointure, devise or other provision unless within one year after the filing of a petition for the appointment of an administrator of the estate or for the probate of the will of her husband she file in the court having jurisdiction of the

settlement of his estate notice in writing that she elects to take the provisions made for her by law instead of such jointure, devise or other provision; and upon filing such notice she shall be entitled to the same dower in his lands and the same right to the homestead as if he had died intestate leaving lawful issue, and the same share of his personal estate as if he had died intestate; provided, that when he shall have died testate the share of personal estate which she may so take shall not exceed the one-third part of his net personal estate, and the provisions of this and sections 233.12 and 233.13 shall not apply to any case where the husband shall die intestate leaving no issue. When no provision shall be, or shall heretofore have been made, for a widow in her husband's will and she shall not be or shall not have been entitled to an election under section 233.12, she shall, without doing any act on her part, be entitled to the share of his estate as provided in this section."

Did the testator have those statutes in mind and intend that his widow should be entitled to the same dower in his lands and the same right to his homestead as if he had died intestate leaving lawful issue, and to the same share of his personal estate as if he had died intestate, leaving lawful issue, provided, however, that when he died testate the share of his personal estate which she should take should not exceed the one-third part of his net personal estate? In other words, did he intend that his widow should take all of his estate or only his homestead during her widowhood, one third of his other real estate in fee, and one third of his personal property? It is our conclusion that the testator intended by the language: "All that part of my estate which would legally go to her according to the statutes provided therefor," that his widow should have that share of his property to which she was legally entitled and of which she could not, in any event, lawfully be deprived. Had the will given all of his property to the persons mentioned in paragraph third thereof, except that part of his estate which would legally go to his widow according to the statutes provided therefor, his intention would have been so plain as not to permit of controversy.

The executor contends that the devise and bequest contained in paragraph second cannot be cut down by a subsequent provision or a residuary clause unless such intention is expressed in positive terms. The principle relied on is well established in this state. In *Will of Richter, supra,* it was said (p. 111) :

"Provisions in a will are not to be so construed as to cut down a gift made in positive and clear terms in a prior provision unless this is done by the use of words definite in meaning and in positive terms expressive of such an intent." See also *Moore v. Moore,* 138 Wis. 602, 120 N. W. 417; *Will of Weymouth,* 165 Wis. 455, 161 N. W. 373; *Will of Loewenbach,* 222 Wis. 467, 269 N. W. 323.

The answer to that contention is that the testator obviously intended, as we construe the will, to devise and bequeath a part of his estate to his widow, and therefore did not "in positive and clear terms" give expression to an intent that his widow should have the whole estate.

The executor cites *Johnson v. Linstrom,* 92 Minn. 8, 99 N. W. 212, which involved a will similar in many respects to the one here. The will in the *Johnson Case* provided:

"Second. It is my will that my wife, Anna Kajsa Johnson shall have such share and part of my estate, both real estate and personal property, as she may be entitled to under the statutes of the state of Minnesota, as the same may provide, at the date of my decease.

"Third. I do hereby give, devise and bequeath all the rest and residue of my estate, both real estate and personal property, of which I may die seized or possessed unto the children of [naming a certain sister and brother], who may be living at the date of my decease."

After the will was drawn the applicable statutes were amended so as to give to a surviving wife whose husband had died intestate a larger share of his estate. The court held that the testator had so clearly expressed his intention that his wife should have the benefit of whatever interest the statute conferred with reference to intestate estates at the time of his de-

cease it would be necessary to find other language in the will in conflict therewith and there was no such language in the will except the residuary clause which the court held was incidental to the main provision for the wife. No consideration was given to any statute permitting a widow to elect to take under the law rather than under the will, if in fact such statutes existed in the state of Minnesota at that time. In *In re Estate of Martin,* 166 Minn. 269, 270, 272, 207 N. W. 618, a conclusion quite different from that stated in the *Johnson Case* was rendered. The will there construed provided:

" 'I hereby give, grant, devise and bequeath unto my beloved wife Margaret Martin, my homestead in the village of Lakeville, Dakota county, Minnesota, together with all other property real and personal to which she would be entitled under the present statutes of the state of Minnesota governing the descent and distribution of the estate of deceased intestates, to have and to hold the same unto her and her heirs and assigns, forever.' "

"Item 3 made legacies of $1,000 each to the three sisters of the testator, with the provision that the legacy of any sister or sisters 'dying prior to my death, shall be and become a part of the residue of my estate hereinafter mentioned, and disposed of as hereinafter provided.'

"Item 4 gave 'all the rest, residue and remainder' of the estate to a brother, Michael J. Martin. Item 5 provided for the erection of a monument and item 6 appointed an executor."

The court said:

"Our statutes of descent and distribution, sections 8719, 8720, and 8726, G. S. 1923, after making certain allowances of personalty to the widow, provide that she shall take 'free from any testamentary or other disposition thereof' to which she shall not have consented in writing, the homestead, one third of the other real estate and one third of the personal property of the deceased. If there are no children and no will, the surviving spouse takes the entire estate. The necessary effect of those statutes in the instant case is that item two of the Martin will, if it stood alone and uncontrolled by

other considerations, would amount to a gift of the entire estate to the widow, for there were no children born of her marriage to the testator. The argument in opposition is that the will, construed as a whole, indicates clearly an intention to give the wife the homestead and only that portion of the other property which she would take under the laws of descent and distribution as against any adverse testamentary disposition to which she had not consented in writing."

In disposing of the contentions of the appellant that under the terms of that will the widow took everything, the court said:

"The argument for the appellant then comes to the simple assertion that we must not only disregard but read out of it about half of the will, the gifts to the sisters and brother. In no other way is it possible to make item two a gift of all the estate to the wife. To allow that argument and its necessary conclusion, would be an unthinkable judicial mutilation of the will. Moreover, it would disregard the rule, as sensible as it is well established, that a will is to be read as a whole and the testator's 'intention is to be gathered from everything contained within the four corners of the instrument.'"

The court held that the widow was limited to that portion of the estate which she would take under the statutes as against any adverse testamentary disposition by her deceased husband. A similar controversy was involved in the case of *Foster v. Clifford*, 87 Ohio St. 294, 295, 305, 101 N. E. 269. The will there provided:

## "II.

"I give and bequeath to my beloved wife, Mary Foster, all that part and interest in my estate, real, personal and mixed, which is secured to her, as my widow, by the laws of distribution of estates, of the state of Ohio, in the cases where wives survive husbands who die intestate.

## "III.

"I give, devise and bequeath absolutely, all the remainder of my property, real, personal and mixed, after the dispositions in items one and two herein have been made, and

wherever the same may be situated, to my dear brother James E. Foster, now of Chicago, Illinois."

It was contended by the widow, that under the terms of the will she was entitled to the entire estate. In overruling that contention, the court, among other things, said:

"Can it be urged, with any force, that the *whole* estate of a husband is *secured* to his widow by the laws of the state, even if there are no children, in the sense that the word is ordinarily and generally used? We cannot subscribe to the meaning given the word 'secured' by the circuit court, when it held that the testator meant that the widow was devised and bequeathed that which she would 'obtain' or 'have' as his widow. The laws of this state will protect a widow to the extent of her dower interest in the realty and to a one-third (approximately) interest in the personal estate, in the occupancy of the mansion house, under section 8607 of the code, and her year's allowance, under section 10656. The husband is free to dispose of the remainder as he sees fit, and the protection afforded her by the law cannot affect such a disposition made by the husband. As has been said in this case, the widow is the prospective heir at law of all the estate in the event there are no children, but it cannot be said that she is secured in this, for the reason that two thirds (approximately) of the estate can be taken from her, by the husband, by will."

The *Martin* and *Foster Cases* are in substantial harmony with the construction which, in our opinion, should be given to the language of the present will.

The trial court concluded that it was the intent of the testator that his widow should take only that part of his estate which she would take under the statutes of this state had he died intestate leaving children surviving him. The testator had no children and therefore he could not have had such a situation in mind. In so concluding, we think the court erred. The construction given to the will by the trial court and that given to the will by us result in the same division of the estate as between the widow and the other beneficiaries mentioned

in the third paragraph. It is our conclusion that the testator intended his widow to have only that part of his estate to which she would be legally entitled and of which she could not be deprived. This conclusion harmonizes the two provisions of the will and permits effect to be given to both. This preserves the testator's intent that his widow should have a part of his estate and that his sisters. and the children of his deceased brothers should have the remainder.

*By the Court.*—The judgment of the county court is affirmed.