WILL OF STEVENS: VANATTER and others, Appellants, vs. STODDARD, Executor, and others, Respondents.

*June 6—June 21, 1939.*

For the appellants there was a brief by *Barlow & Fugina* of Arcadia, and oral argument by *Elmer E. Barlow.*

*D. M. Perry* of Black River Falls, for the respondent Arthur E. Stoddard.

For the other respondents there was a brief by *E. S. Jedney* and *Ralph S. Lund,* both of Black River Falls, and oral argument by *Mr. Jedney.*

FRITZ, J.   The question as to the construction of the will of Margaret Vanatter Stevens arises by reason of provisions in the thirteenth paragraph, disposing of the residue of the estate.   At the time of the execution of the will, and at her death, the testatrix was a widow.   Her nearest relatives were three brothers.   Two of them, Charles aged sixty-five, and William aged sixty-nine, had no property of their own and had never married or had children.   Charles was mentally incompetent and resided with the testatrix.   William made his home with her for some time before her death, and was ill a considerable part of the time.   The third brother, Leigh, who was about sixty years of age, was married, had several children, and lived in California.   The testatrix also had a number of nieces and nephews on her own as well as on her husband's side of the family.   In her will she disposed of her estate, valued in excess of $30,000, by the following provisions:

First, a direction to pay her debts and the expenses of the funeral and administering the estate.

"Second: I do hereby give and bequeath to Arthur E. Stoddard, of Alma Center, Wisconsin, the sum of five thou-

sand dollars in trust, however, to be used for the care, maintenance and support of my brother, Charles W. Vanatter, if he survives me, during his lifetime, and for the payment of the expenses and charges during his last sickness, as well as for his burial expenses, and whatever amount may remain, if any, from said fund of five thousand dollars after the full and complete performance of the trust created by this will is to pass under the residuary clause of my will and which is hereinafter stated, and I do hereby name the said Arthur E. Stoddard as trustee to carry out the trust here created. . . .

"Third: I do hereby give and bequeath to Arthur E. Stoddard of Alma Center, Wisconsin, the sum of three thousand dollars in trust, however, to be used for the care, maintenance and support of my brother, William Vanatter, if he survives me, during his lifetime, and for the payment of the expenses and charges during his last sickness, as well as for his burial expenses, and whatever amount may remain, if any, from said fund of three thousand dollars after the full and complete performance of the trust created by this will, is to pass under the residuary clause of my will and which is hereinafter stated, and I do hereby name the said Arthur E. Stoddard as trustee to carry out the trust here created.

"Fourth: I give and bequeath to my brother, Leigh Vanatter, if living, the sum of one thousand dollars, which is to be placed in trust with the provision that only the income and one hundred dollars of the principal may be used annually for said Leigh Vanatter, except in case of sickness or other disability, when such part or portion of the principal may be used as necessary for his care and support, and I do hereby name the said Arthur E. Stoddard as trustee to carry out the terms and provisions of this paragraph of my will."

In the fifth, sixth, seventh, and eighth paragraphs she named all of her nephews and nieces, as well as those of her deceased husband, and bequeathed $200 to each of them. In the ninth, tenth, eleventh, and twelfth paragraphs she made specific bequests, aggregating $1,650, to charitable and religious organizations. The thirteenth paragraph reads:

"All the rest, residue and remainder of my property and estate, wheresoever located and of whatsoever title or de-

scription, I do hereby give and bequeath to my brothers, my nieces and nephews, and to the nieces and nephews of my husband, E. W. Stevens, who are all named in my will, to be divided between them in proportion to the amounts given each of them by the terms and provisions of this will."

And in the fourteenth paragraph she appointed Arthur E. Stoddard as executor, and as guardian for her brother, Charles W. Vanatter. The latter died after the death of the testatrix, and about $450 was used out of the trust fund provided by the testatrix for his care and support. The remainder thereof is in the possession of Arthur E. Stoddard, who was appointed trustee, and also executor of the will.

In petitioning for a construction of the will, the executor contended that it is ambiguous on its face by reason of the use of the word "brothers" in the residuary clause (thirteenth paragraph). The court found that a clerical error was made in typing the will, and that the word "brothers" was intended by the testatrix to read "brother," and to refer to solely the testatrix's brother Leigh. From an order to that effect this appeal was taken.

As this court has often said,—

"in construing wills, all rules of construction yield to the cardinal rule that the language of a will should be so construed as to give effect to the intention of the testator if that intention may be ascertained from the language of the will itself, considered in the light of the surrounding circumstances." *Will of Pfeiffer,* 231 Wis. 117, 285 N. W. 432; *Estate of Weiss,* 224 Wis. 192, 271 N. W. 918; *Will of Loewenbach,* 222 Wis. 467, 471, 269 N. W. 323.

In the case at bar, it appears upon due consideration of the will and the circumstances established by the evidence, that the testatrix had given considerable thought to planning the disposition of her estate, and that her plan and intentions as revealed by the will are clear, logical, and fair to all concerned. It is evident that the first objects of her bounty were her brothers, Charles and William, who were in distress.

She placed them in a class by themselves and made special provision for them by setting up a separate trust fund of $5,000 for Charles, and $3,000 for William, to be used for the care, maintenance, and medical and burial expenses of each; and provided that, should any part thereof remain after complete performance of the trust, such part should pass under the residuary clause of the will. As her brother Leigh's circumstances were better, she placed him in a different class, and gave him outright $1,000, with but restrictions as to the mode of payment. Next in the order of her testamentary plan were her own nieces and nephews and those of her husband, and she gave to each a cash legacy of $200. Then, after giving $1,650 to certain charitable institutions and organizations, she completed her testamentary plan by providing that the residue of her estate should be divided between those members of her family, including her husband's nieces and nephews, to whom she had given legacies by the previous provisions of the will, "in proportion to the amounts given each of them by the terms and provisions of this will." It it clearly evident from the wording of the will in its entirety, and is natural and reasonable, in view of their conditions and circumstances, that she did not intend to give anything directly to her brothers, Charles and William. She merely set up trust funds for their care, etc., and by apt provisions bequeathed those funds to Arthur E. Stoddard so as to vest title thereto in him, as trustee, to use the funds for the specified purposes; and provided that whatever remained of the trust funds after the complete performance of the trusts was to pass under the residuary clause of the will. By the latter provision she expressly excluded Charles and William from receiving or disposing of the residue of the trust funds. After having set aside as trust funds the $8,000, which were ample for the care and support of Charles and William, and expressly providing that the remainder thereof, after the performance of each trust, should revert for disposal under the residuary clause of her will, it manifestly

would have been contrary to her evident testamentary plan for the testatrix to give to them unconditionally by the residuary clause the major portion of the residue of her estate, which thereafter might descend to their heirs as intestate property. It was to avoid that very result that she provided, in creating the trusts, that unused portions of the funds thereof should pass under her residuary clause. Had she intended to do otherwise, she would have given the funds to Charles and William outright, with merely such restrictions as she considered necessary in view of their conditions, but the language of the will as a whole clearly discloses that no such result was ever intended by her. The facts that the trust funds created by the second and third paragraphs of the will are not given directly to Charles and William, but are, instead, bequeathed to a trustee with the provision that the unused residues thereof shall pass under the residuary clause of the will, are particularly significant in view of the fact that in respect to neither the bequest of $1,000 given directly to the brother Leigh with but restrictions as to the mode of payment, nor any of the specific legacies of $200 given to each nephew and niece is there any provision that any part of those bequests shall revert and pass under the residuary clause of the will.

The differences and contrast in those respects are of controlling consequence in construing that portion of the clause which reads:

"I do hereby give and bequeath to my brothers, my nieces and nephews, and to the nieces and nephews of my husband, E. W. Stevens, who are all named in my will, to be divided between them in proportion to the amounts given each of them by the terms and provisions of this will."

Thereunder, in so far as the nieces and nephews are concerned, each is to share equally in proportion to the bequest to each of $200. Likewise, as the definite bequest of $1,000 was given directly to the brother Leigh, he is to receive under the residuary clause five times as much as each niece or nephew. Up to this point the will is certain and unam-

biguous, and had the word "brother" been typed instead of "brothers," no problem of any moment would have arisen, because there was a specified amount given under the will directly to the brother Leigh, as well as to each niece and nephew. But as no specified amount was given directly to either Charles or William, and the amounts set up as trust funds for their benefit are subject to the provision that the unused residues thereof shall pass under the residuary clause of the will, and there are consequently "no amounts given to each of them" in proportion to which the division of the residue of the estate can be made in the manner prescribed in the residuary clause, neither Charles nor William can become eligible as residuary legatees. In view of the language used in making the bequests in trust, and in providing for the disposition under the residuary clause of the unused residue of the trust funds, a division cannot be made under the residuary clause by giving to William and Charles, as well as to each of the named legatees, an amount "in proportion to the amounts given each of them by the terms and provisions of this will." Had the $5,000 bequest been given to Charles directly, instead of to a trustee, and without a provision that any unused residue shall pass under the residuary clause of the will, there would have been a definite amount which could be used as basis for computing the proportionate division to be made under that clause. That is also true in respect to the $3,000 trust fund set up for the benefit of William. On the other hand, if the trust funds set up for the benefit of Charles and William could be considered "amounts given each of them" within the meaning of the residuary clause, and Charles and William were to share in the division of the residuary estate on the basis of those amounts in proportion to the amounts of the legacies given to the nieces and nephews and to Leigh, then Charles would receive nearly one half of the residue of the estate, or five times more than Leigh, and twenty-five times more than each nephew or niece. Likewise, William would receive one-quarter of the estate or three times as much as Leigh and fifteen times as much as each niece and

nephew. Those consequences would be wholly foreign to the testamentary plan disclosed by the provisions setting up the trust funds and disposing of the residue thereof, which evidence convincingly that it was the testatrix's intention to avoid giving any amount whatsoever directly to either Charles or William, or their estates. That intention renders it highly improbable that it was her intention to have the major part of the residue of her estate pass without any condition or restriction to Charles or William, neither of whom could dispose of or leave to their heirs even the mere unused residue of the trust funds set aside for their benefit.

*By the Court.*—Order affirmed.