WILL OF ASBY: CARPENTER and others, Appellants, vs. FIRST NATIONAL BANK & TRUST COMPANY, Executor, Respondent.

*September 14—October 10, 1939.*

For the appellants there was a brief by *Benson, Butchart & Benson* of Racine, and oral argument by *Emery Benson*.

For the respondent there was a brief by *Beck, Smith & Heft* of Racine, and oral argument by *Carroll R. Heft*.

NELSON, J.    Sidonia Asby, a resident of Racine county, died leaving a last will and testament which thereafter, on September 21, 1933, was duly admitted to probate.    First National Bank & Trust Company of Racine, nominated and appointed executor of the will by the testatrix, duly qualified as such and proceeded to administer the estate.    On September 1, 1937, the executor petitioned the court to construe the

twentieth paragraph of the will, asserting that it was ambiguous and needed construction.

The paragraph in question is as follows:

"All the rest, residue and remainder of my property, real and personal, wherever situated and of whatever nature I might die seized or possessed of, I give, devise and bequeath, share and share alike, to Arthur Wilkins and the grandchildren of William Asby, my late husband, surviving me at the time of my decease."

The county court concluded that it was the intention of the testatrix to give one half of her residuary estate to Arthur Wilkins and one half to the surviving grandchildren of William Asby as a class. An order so construing the will was accordingly entered. The fourteen appellants are the grandchildren of William Asby, who survived the testatrix.

The sole question upon this appeal is whether the county court correctly construed the will and gave effect to the intention of the testatrix as expressed therein.

The appellants contend that the court erred in so construing the will, and that the true intention of the testatrix, as expressed in the twentieth paragraph, was that Arthur Wilkins, nephew, and the several grandchildren surviving her, should share equally in her residuary estate.

It is elementary that the intention of the testator is to be gathered from the four corners of the will. *Estate of Sherburn S. Merrill,* 196 Wis. 357, 220 N. W. 383, and it has often been said that "in construing wills, all rules of construction yield to the cardinal rule that the language of a will should be so construed as to give effect to the intention of the testator, if that intention may be ascertained from the language of the will itself, considered in the light of the surrounding circumstances." *Will of Pfeiffer,* 231 Wis. 117, 119, 285 N. W. 432, and cases therein cited.

The will was executed on September 24, 1931. It contains twenty-two paragraphs. The first paragraph directs that her

just debts, funeral expenses, and expenses of administration be first paid, and that all inheritance and other taxes be paid out of the body of her estate. The second paragraph contains direction for her funeral. The third paragraph directs the expenditure by her executor of $10, or a greater sum if necessary, to place her name in the Book of Remembrance in Milwaukee. The fourth paragraph bequeathed the sum of $200 to the city of Racine, in trust for the perpetual care of the one-half cemetery lot on which her deceased husband and his first wife are buried. The fifth paragraph provides:

"I give and bequeath my clothing to my sisters surviving me, share and share alike, or if no sister survives me, then same shall pass unto my nieces surviving me in England, share and share alike."

The sixth paragraph bequeaths $1,000 to St. Luke's Protestant Episcopal Church of Racine. The seventh paragraph bequeaths $200 to the British Old Ladies' Home of Hollywood, Illinois. The eighth paragraph bequeaths $50 to Douglas Fairbanks Larsen (a great grandson of her deceased husband). The ninth paragraph bequeaths $1,000 to the Parish of Eyeworeth in the county of Bedfordshire, England, to be used for certain purposes. The tenth paragraph provides:

"I give and bequeath the sum of five hundred ($500) dollars to my stepsister, Susan Wyatt, of Thornham, Kings Lynn, Norfolk, England, or in the event of her death prior to my decease, to my nieces surviving me at the time of my death, share and share alike."

The eleventh paragraph provides:

"I give and bequeath the sum of five hundred ($500) dollars to my stepsister, Lizzie E. Carter, of Charing Kent, England, or in the event of her death prior to my decease, to my nieces surviving me at the time of my death, share and share alike."

The twelfth paragraph bequeaths $200 to her nephew, Albert Wilkins; $200 to her niece, Flower Wilkins; $200 to

her niece, Ethel Andrews; "and to my nephew, Arthur Wilkins, the sum of five hundred ($500) dollars, or in the event of the death of either or any of my said nieces or nephews named in this paragraph prior to my decease, then the said legacy of such deceased niece or nephew shall be paid to the survivor or survivors of them, share and share alike."

The fourteenth, fifteenth, and sixteenth paragraphs bequeath $100 to each of three great grandchildren (of her deceased husband). The seventeenth paragraph bequeathed her silverware to two nieces in England. The eighteenth paragraph bequeathed her sewing machine to St. Luke's Auxiliary of Racine. The nineteenth paragraph bequeathed her walnut bureau and marble-top table to her granddaughter, Marion Larsen. The twentieth paragraph, hereinbefore recited, bequeathed and devised the rest, residue, and remainder of her property. The twenty-first paragraph authorized her executor to sell all or any part of her estate, except personal property specifically bequeathed, and paragraph twenty-second nominated and appointed the executor.

The following surrounding circumstances appear from the record and the evidence adduced at the hearing: The testatrix was the second wife of William Asby, deceased. No children were born of that marriage. A substantial share of her investments was acquired from income received from the estate of her deceased husband who died in 1907. Testatrix never remarried. Arthur Wilkins is a nephew of the testatrix. He came from England to America in 1907. He made his home with testatrix for the next four or five years. He has resided in Racine ever since. He saw his aunt, the testatrix, about once a week. She often called upon him to help her. He would take her downtown on Saturday afternoons so that she might do her shopping. He called upon her to do heavy work around the house. He saw her regularly until her death. The eight or nine grandchildren of her

deceased husband who resided in Racine were seen at various times at the home of the testatrix.

No will involving a similar provision has heretofore been construed by this court. We are therefore free to consider this controversy as one of first impression.

It is our opinion that the intention of the testatrix as expressed in the twentieth paragraph of her will was that her nephew, Arthur Wilkins, and all of the grandchildren of her deceased husband who survived her, should share equally in her residuary estate, that is to say, on a *per capita,* rather than on a *per stirpes,* basis. The language:

"I give, devise and bequeath, *share and share alike,* to Arthur Wilkins and the grandchildren of William Asby," given its ordinary meaning would seem to be susceptible of no other construction.

The testatrix, in prior paragraphs, used the phrase "share and share alike" no less than four times and in so doing obviously intended it to mean "equally." The position of the phrase "share and share alike" before the language "to Arthur Wilkins and the grandchildren of William Asby" is quite significant. Had that phrase followed the language "surviving me at the time of my decease" the argument that the testatrix intended to treat the grandchildren separately and as a testamentary class might be more plausible.

The decisions of the courts in construing wills for the purpose of determining whether legatees should take *per capita* or *per stirpes,* are said to be in hopeless confusion. There is apparently much confusion in the decisions if the facts of each case are not kept in mind and their distinguishing features noted. See annotations in 16 A. L. R. p. 15; 31 A. L. R. p. 799; 78 A. L. R. p. 1385. The author of the annotations in 16 A. L. R., *supra,* comments on the situation thus:

"It is a common remark that the decisions on the question as to when beneficiaries under a will are to take *per capita,*

and when *per stirpes,* are in hopeless confusion. Analysis and comparison, however, show that their diversity of result is due not to a difference as to the principles of construction, but as to the amount of evidence of a contrary intent which will overcome the general presumption that, where the proportions in which the beneficiaries are to take are not specified, they take *per capita.* The cause of this difference is due to the inclinatiòn of some courts—notably those of Connecticut, Georgia, Illinois, Indiana, Kentucky, New Jersey, and Pennsylvania—toward stirpital distribution wherever possible."

However, it appears that the great majority of the courts have recognized and followed the rule of construction that if a testamentary gift is made to one or more persons named and the children of another person, as for instance, to A and the children of B, the persons entitled will, in the absence of anything to show a contrary intention, take *per capita,* and not *per stirpes.* See numerous cases cited and digested in 16 A. L. R. p. 83, following the title:

"o. Under a bequest to persons named and the children of others," and in 31 A. L. R. p. 805, and 78 A. L. R. p. 1407, supplementing the annotations in 16 A. L. R.

It also appears that the courts are practically unanimous in holding that when the language of a will directs that legatees shall take "equally" or "share and share alike," such language imports a division *per capita.* See cases cited and digested in 16 A. L. R. p. 22, under the title:

"f. Effect of direction that legatees shall take equally."

See also supplemental annotations in 31 A. L. R. p. 799, and 78 A. L. R. p. 1389. No purpose would be served by incorporating into this opinion the numerous cases digested in those annotations which are so conveniently available for examination. We conclude that the twentieth paragraph is not ambiguous, and that it was the intention of the testatrix that her nephew, Arthur Wilkins, and all of the grandchil-

dren of her deceased husband surviving her should share equally in her residuary estate.

Even assuming the questioned paragraph to be ambiguous, no particular light is shed upon the provision by the surrounding circumstances. It is argued in support of the construction given to the provision by the county court that Arthur Wilkins was a blood relative of the testatrix and the grandchildren of her deceased husband were not related to her; that Arthur Wilkins was her favorite relative and closer to her than any of the grandchildren. The county court was obviously influenced by such considerations. While it appears from the testimony of Arthur Wilkins that he maintained close, helpful, and friendly relations with the testatrix which naturally might induce her to favor him in her will, it appears that he was so favored. He not only was given a share of the residuary estate but was also bequeathed the sum of $500, which was $300 more than was given to any other nephew or niece, if only the primary gifts be considered.

It is argued on behalf of the grandchildren that the surrounding circumstances show that she was William Asby's second wife; that under her husband's will she received a life estate; that a substantial part of her investments constituting her estate came from the income which she received from her husband's estate. In her will she made specific bequests to a number of her blood relatives and specific bequests to several of the great grandchildren of her deceased husband. There is, in the surrounding circumstances, nothing sufficiently cogent to overthrow the construction which, in our opinion, should be given to the language of the twentieth paragraph. It is our opinion that the county court erred in concluding that the testatrix intended by the twentieth paragraph of her will to give one half of the residuary estate to Arthur Wilkins and the other half to the surviving grandchildren as a class.

The appellants argue at considerable length as to what costs and attorneys' fees should be allowed by this court in

the event the order of the county court is affirmed. The appellants also ask that this court give direction to the county court for its guidance in fixing the amount of the executor's fees and the fees of its attorneys. This request is based upon the following facts and contentions, (1) that Arthur Wilkins, who, up to the time of the proceedings in the county court, was represented by separate attorneys, filed no brief in this court but left the burden of sustaining the order of the county court to the executor; (2) that that course was pursued so as to save Arthur Wilkins the expense of appearing in this court and presenting arguments in support of the order of the county court; and (3) that the executor has no interest one way or another in the distribution of the residuary estate. While an executor is not primarily interested in whether a beneficiary shall receive a greater or a lesser share of an estate, he is interested as the chosen representative of the deceased to see that her will is carried into effect. Several cases are cited by the appellants holding in effect that administrators cannot be considered as aggrieved parties under an order distributing an estate. *Estate of Sullivan,* 200 Wis. 590, 229 N. W. 65 (dissenting opinion of Mr. Justice Owen); *Estate of Bailey,* 205 Wis. 648, 238 N. W. 845.

There is, however, in our opinion, a difference between the administrator's interest in the distribution of an estate and an executor's interest in the construction of a will. In *Cowan v. Beans,* 155 Wis. 417, 144 N. W. 1129, it was held that a proponent of a will, who is the named executor therein, is a person aggrieved by a judgment of the county court refusing probate of the will. It was there said (p. 418):

"Such a person is the representative of the testator and is charged with the duty of seeing that the will is probated and its provisions carried into effect."

In our opinion it may be said with equal soundness that an executor is charged with the duty of seeing that the intentions of the testatrix, as he in good faith believes them to be,

are carried into effect. Here the executor did not appeal from the order of the county court. Only the grandchildren appealed. All that the executor has done is to present to us its views as to the law. Had the executor not served a brief, the order would have been reversed under the rule without opinion or discussion. In our opinion it may not be said that an executor has no duty to present to the courts his views as to the facts and the law to the end that the true intentions of the testator may be found and given effect. An examination of a number of our cases will reveal that executors have appealed to this court from orders construing wills or appeared as respondents in such appeals. *Heiss v. Murphey,* 40 Wis. 276; *Heiss v. Murphey,* 43 Wis. 45; *Appeal of Schaeffner,* 41 Wis. 260; *Sawtelle v. Ripley,* 85 Wis. 72, 55 N. W. 156.

Of course there must be some showing of good faith in appealing or in opposing the contentions of appellants upon appeals from orders construing wills, if remuneration out of the estate is expected. All of these matters may be given consideration by the county court when the executor's fees and those of his attorneys are before it for adjustment.

*By the Court.*—Order reversed, and cause remanded with directions to construe the will in accordance with the opinion. No costs to be taxed by either party upon this appeal.