MEISTER and others, Appellants, vs. FRANCISCO and another, Respondents.

*December 4, 1939—January 16, 1940.*

320

For the appellants there was a brief by *Sheldon & Freytag* of Elkhorn, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by *Charles S. French* and *Sturges P. Taggart,* both of Lake Geneva, and oral argument by *Mr. Taggart.*

NELSON, J. So many of the material facts as are necessary to an understanding of this controversy will be summarized. Gustave Meister died on December 17, 1930, leaving a last will and testament, dated November 25, 1921, which was duly admitted to probate. He left surviving him, Lena Meister, widow, three sons, two daughters, and five grandchildren, sons and daughters of William Meister, a deceased son. The real estate which he left was appraised at $23,600 and the personal property at $4,674.42. His debts amounted to only $200. The real estate consisted of a farm and the lot in the city of Lake Geneva. The farm apparently was well stocked.

The will of Gustave Meister first directed the payment of his debts, funeral, and administration expenses, and then provided:

"*Second.* I give, devise and bequeath unto my wife Lena, all of the estate of which I may die seized or possessed, both real and personal, to have, use and enjoy the same for and during the term of her natural life, with full power to sell and convey any and all of the real estate, and upon such sale to execute all necessary deeds of conveyance, and to deal with the proceeds as if it were personal property, or to convert the same into other real estate, in her discretion, without the authority of any court; and from and immediately after the death of my said wife, it is my will that all of the principal of said estate as it may exist at that time, vest in H. A. Burdick of Lake Geneva, Wisconsin, in trust, however, to

convert the real estate, if any, into personal property, within a reasonable time, so that the same will not be sacrificed, and when all of said property shall be converted into cash to divide the same equally among my children living at the time of the death of my said wife, in equal shares as follows: One sixth thereof to my son Herman Meister, or if he be not then living, such share to go in equal shares to his issue; one sixth thereof to my daughter Annie Bartelson, or if she be not living, such share to go to her issue in equal shares; one sixth thereof to my son Frank Meister, or if he be not living, such share to go in equal shares to his issue; one sixth thereof in equal shares to the then living issue of my deceased son William Meister; one sixth thereof to my son Charles Meister, or if he be not then living, such share to go to his issue in equal shares; one sixth thereof to my daughter, Ida Morgan, or if she be not then living, such share to go to her issue in equal shares.

"*Item.* It is my will that in making the final distribution of my said estate, the sum of four hundred dollars advanced by me to pay funeral and burial expenses of my late son William, shall be by my said trustee equalized by the payment to each of the other children, or issue as the case may be, the sum of four hundred dollars; and further, should any of my said children die leaving no issue living at the time of the decease of my said wife, it is my will that the share which would have been distributed to that child or his or her issue be considered as a part of the general fund and divided equally among the living children, the child or children of any deceased child to take such parent's share, so that the whole of said estate shall be divided among my children or their issue, and not under any circumstance to the collateral heirs of said child or to the collateral heirs of the issue of any child."

Shortly after the death of Gustave Meister, Lena Meister, the widow, went to Lake Geneva to reside with her daughter, the defendant Ida M. Francisco. She continued to reside there until she died on December 19, 1938. On August 28, 1938, about four months before her death, she executed and delivered to the defendant, a quitclaim deed covering lot

No. 4 in Roger's Second Subdivision to the City of Lake Geneva. The consideration expressed in the deed was "One ($1) dollar and other valuable consideration" and also the following:

"It is hereby agreed and understood that as a part of the consideration of this deed of conveyance the said Ida Meister Francisco is to take care of, support and maintain and do whatever else may be necessary to make the grantor reasonably comfortable during her lifetime, and the said grantee on her part agrees to and with the said grantor that during her lifetime she will care for and support said grantor and see that she receives proper care."

A $1 United States internal revenue documentary stamp was attached to the deed. The premises deeded, according to the testimony of one witness, were worth between $4,000 and $4,500, and had been and then were leased for $25 per month. On December 29, 1931, Lena Meister, as executrix, petitioned the county court and represented that the will of Gustave Meister had been duly admitted to probate; that one year had elapsed since the death of the testator; that the second paragraph of the will provided (hereinbefore recited); that she was desirous of ascertaining whether there is or will become due any inheritance tax upon the transfers under the terms of the will and prayed that the court construe the will, not only in its entirety but also in particular as to the following:

(1) To what extent, during her lifetime, may the widow Lena Meister, encroach upon the corpus of said estate? (2) Upon the death of the testator, Gustave Meister, did any of his issue acquire any vested interest in any portion of the estate and, if so, can such interest be now ascertained? Thereafter, on September 13, 1932, pursuant to notice, a hearing was had on the petition mentioned and also on her final account as executrix. The court approved of her account and entered a judgment assigning the estate pursuant

to the terms of the will. The judgment, among other things, provided "that the transfer of said property by said will, as to Lena Meister, the widow, is exempt from tax; and the tax on any and all transfers to the other persons named in said will cannot be determined, until the death of said widow, as all their interests are now contingent." The judgment provided in substance that all of the real and personal property be vested in accordance with the terms of the will, which provisions were substantially recited in full.

The trial court found many of the facts hereinbefore recited, and also that during the interval between December 22, 1930, and December 19, 1938, the defendant gave and provided her mother, the said Lena Meister, with diligent, capable, and unremitting and solicitous care which, upon various and numerous and progressively frequent and protracted occasions, was a substantial burden; that the defendant gave, and the said Lena Meister received from her, a valuable consideration for the execution of said deed and the conveyance of the real estate thereinbefore described; that, excepting for said conveyance, the defendant received no consideration nor compensation for her care of the said Lena Meister. The court concluded that under the terms of the will Lena Meister became vested with an estate for life, with power to encroach upon the corpus thereof for her comfortable support and maintenance, together with the power to sell and convey real estate for a valuable consideration, whether or not necessity for recourse to real estate for her comfortable support and maintenance should exist; that the deed delivered to the defendant conveyed an absolute estate in fee simple in and to the real estate hereinbefore mentioned.

In construing wills, all rules of construction yield to the cardinal rule that the words of a will are to be construed so as to give effect to the intention of the testator, which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testator at

the time of its execution. *Will of Fouks,* 206 Wis. 69, 238 N. W. 869; *Will of Pfeiffer,* 231 Wis. 117, 285 N. W. 432; *Will of Asby,* 232 Wis. 481, 287 N. W. 734.

In the view we take of this controversy, two questions are presented for decision: The first question is, What estate did Gustave Meister intend that his widow, Lena Meister, should take under his will? It is our opinion that Gustave Meister, the testator, intended that his widow should take only a life estate in all of his property. The language:

"To have, use and enjoy the same for and during the term of her natural life" considered in connection with the language:

"And from and immediately after the death of my said wife, it is my will that all of the principal of said estate as it may exist at that time, vest in"—

the trustee for the purpose of converting the real estate, if any, into cash and dividing it among his children and grandchildren, is capable of no other construction.

In addition to the life estate in his property the widow was given the power to sell and convey any and all of the real estate, to deal with the proceeds thereof as personal property, or to convert the same into other real estate in her discretion.

The county court was right in so far as it held that under the will the widow took a life estate. As to the correctness of the trial court's conclusion that Lena Meister had the power to encroach upon the real-estate corpus of the estate for her comfortable support and maintenance, regardless of the necessity therefor, we have grave doubts. According to our view, the language of the will, viewed in the light of the surrounding circumstances, would hardly support the trial court's conclusion. It will be recalled that the appraised value of the estate was nearly $29,000; that the farm was well stocked; that the farm had furnished support for the testator, his wife, and the other members of the family; that

one of the brothers was operating it on a fifty-fifty share basis; that the Lake Geneva property was rented for $25 a month. In our opinion it is more reasonable to conclude that the testator believed that his widow would be adequately supported if she had the life use, *i. e.,* the income from all of his property so long as she should live, and that he intended that the remainder,—"all of the principal,"—upon her death, should vest in the trustee for purposes of conversion into cash and division among his children and grandchildren. No such powers were given to the widow here as were given to the widow in *Will of Zweifel,* 194 Wis. 428, 216 N. W. 840; in *Will of Hutchinson,* 215 Wis. 349, 254 N. W. 531, or in *Estate of Holmes, ante,* p. 274, 289 N. W. 638. The language of the present will is more like that construed in *Jones v. Jones,* 66 Wis. 310, 28 N. W. 177, and *Hovely v. Herrick,* 152 Wis. 11, 139 N. W. 384. There is no language in the present will such as was found in the will construed in *Auer v. Brown,* 121 Wis. 115, 116, 98 N. W. 966. In that will, the widow was given "the full power and right to use all or any of said estate as she may desire even if in so doing she shall use and exhaust the whole. She may not only use the same as she may need, but she may during her life and subject only to her own discretion (in which I have all confidence), donate the same or its proceeds, or any part or portion thereof, to any person, persons, or objects of her choice exactly the same as if and to the same extent as if she was the absolute owner in fee or absolutely." Clearly, the widow here was not given that "absolute power of disposition" mentioned and defined in secs. 232.08 and 232.12, Stats.

But whether the trial court's conclusion that the widow had the right to encroach upon the corpus of the real estate regardless of necessity for such recourse for her comfortable support and maintenance, was sound, we need not presently decide because of our decision on the second question presented.

The second question is, What was the nature of the estate that was conveyed to the defendant, Ida M. Francisco, by virtue of the quitclaim deed?

In the early case of *Towle v. Ewing,* 23 Wis. 336, the maker of the will there construed devised and bequeathed "all his real and personal estate to his mother, Anna Towle, 'to have and to hold during her natural life, with the right to sell and convey the same.' " The will also contained the following provision:

"Should my brother, Jackson Towle, outlive my said mother, Anna Towle, it is my will that any residue or remainder of my estate, or the avails of any sale of a part or of the whole of my said estate, of which my said mother shall be in possession at the time of her death, shall go to my said brother, Jackson Towle, and his heirs," etc.

The mother, in her lifetime, executed and delivered a quitclaim deed covering some of the property. The question for decision there was whether the deed conveyed a fee under the power of sale or merely her interest as life tenant. It was held that an ordinary quitclaim deed does not contain any apt words indicating an intent to sell under a power and that the language naturally and properly relates only to the interest which the grantor owns in the land, and that where a party making the conveyance actually owns an interest upon which it can take effect, it will be held to be only a conveyance of the interest of the party and not a conveyance in the execution of a power.

The rule of the *Towle Case* was recognized and approved in *Lardner v. Williams,* 98 Wis. 514, 520, 74 N. W. 346. It was there said:

"The widow had a life estate during widowhood, and a power of sale over the same land. The well-established rule at common law is that where a person has both an interest and a power, a conveyance which contains no apt words indicating an intent to exercise the power will be held to be merely a conveyance of the interest, and not an execution of the power. 4 Kent, Comm. 334, 335; Sugden, Powers, ch. 6,

sec. 8; *Mut. L. Ins. Co. v. Shipman,* 119 N. Y. 324. This rule was recognized and adopted in this state in case of a quitclaim deed made by a life tenant who had a power to convey the fee. *Towle v. Ewing,* 23 Wis. 336."

In *Auer v. Brown,* 121 Wis. 115, 121, 98 N. W. 966, it was said:

"In *Towle v. Ewing* a mere quitclaim deed was made by a life tenant having power of disposal. It was held to have no effect except upon the life estate, because the intent of the parties inferable from the instrument was to buy and sell nothing else; such inference from a mere quitclaim deed in distinction from one on its face purporting to convey a fee being justified by authorities there cited and others. *Griswold v. Bigelow,* 6 Conn. 258; *Yates v. Clark,* 56 Miss. 212; *Baird v. Boucher,* 60 Miss. 326; *Bishop v. Remple,* 11 Ohio St. 277; *Owen v. Ellis,* 64 Mo. 77."

The rule in the *Towle Case* is in accord with the common law as almost universally established. See 49 C. J. p. 1293, § 125; 21 R. C. L. p. 798, § 30. It is stated in R. C. L. that in some of the cases the view is expressed that the rule of the *Towle Case,* and other similar cases, is too technical, and that the intent of the parties should govern. However, it is there stated:

"Again, an ordinary quitclaim deed does not execute a power to dispose of the fee where the grantor has an interest on which it may operate."

It is our opinion that the quitclaim deed executed and delivered by Lena Meister, the owner of the life estate and who had the power to convey, conveyed to the grantee, the defendant, Ida Meister Francisco, only the life estate, the interest which the widow then owned.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the opinion.